**Donald R. BARBER, Plaintiff-Appellee,**

**Texas Employers' Insurance Association, Intervenor-Appellee,**

v.

**TEXACO, INC., Defendant-Appellant.**

No. 83–2061

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Oct. 27, 1983.

As Amended on Denial of Rehearing Dec. 12, 1983.

---

Michael C. Farrow, Houston, Tex., for defendant-appellant.

Maner, Nelson & Reaud, Glen W. Morgan, Beaumont, Tex., for Barber.

Mehaffy, Weber, Keith & Gonsoulin, Arthur R. Almquist, Beaumont, Tex., for Tex. Employers' Insurance Association.

Before CLARK, Chief Judge, RUBIN and JOLLY, Circuit Judges.

PER CURIAM:

Texaco, Inc. appeals from an adverse judgment for compensatory and punitive damages in this negligence action. The action was initiated by Donald Barber to obtain damages for injuries he suffered after inhaling hydrogen sulfide gas emitted from a tank located at a Texaco oil refinery where Barber was working for an insulation company hired by Texaco. A six-member jury found Texaco, Inc. to be negligent and grossly negligent, and awarded $10,600 in compensatory damages and $50,000 in punitive damages. Texaco alleges error in the trial court's submission of the negligence and gross negligence issues to the jury, instruction on the theory of res ipsa loquitur, refusal to charge the jury with an instruction requested by Texaco, and failure to submit to the jury the issue of Barber's employer's negligence. For reasons explained below, we affirm the judgment of the trial court based on the jury finding of negligence, and reverse the finding of gross negligence.

In August 1979, Barber was working for B & B Insulation Company at an oil refinery owned and operated by Texaco in Port Arthur, Texas. Barber was working in the vicinity of a "sour water tank," part of a unit that processed crude oil with a high sulfur content. The tank held processed water with hydrogen sulfide dissolved in it. While working in an area downwind of the tank, Barber was exposed to a "cloud" of hydrogen sulfide gas. He immediately thereafter became dizzy and nauseated, and subsequently was taken to a hospital emergency room after passing out at home. He was treated and released, and has suffered chronic chest and lung problems since.

Texaco alleges that the evidence adduced at trial was insufficient to support the jury findings of negligence and gross negligence, and that the trial court therefore erroneously denied Texaco's motions for a directed verdict and a judgment notwithstanding the verdict. *Boeing v. Shipman,* 411 F.2d 365 (5th Cir.1969) (en banc) supplies the test to be used by this court in assessing challenges to evidentiary sufficiency in a federal diversity suit. We must consider all evidence in the light most favorable to Barber in an effort to determine whether there existed "evidence of such quality and weight that reasonable and fair minded men in the exercise of impartial judgment might reach different conclusions.... " 411 F.2d at 374.

■ The evidence presented in this suit was sufficient to present a question for the jury of whether Texaco was negligent. Michael Thompson, Texaco's safety supervisor in charge of the area containing the gas-emitting sour water tank, testified by deposition that the tank was equipped with relief valves that protected the tank from undue pressure buildup by releasing hydrogen sulfide gas. Texaco maintained a monitoring device that signals an alarm system when it detects a certain level of hydrogen sulfide in the atmosphere. On the day after Barber's accident, tests indicated that the tank was discharging hydrogen sulfide at a rate exceeding that level. The monitoring system was located downwind of where Mr. Barber was working, and had not been activated by the emissions that overcame him. Mr. Thompson also stated that the sour water tank had a history of hydrogen sulfide problems, that exposure to hydrogen sulfide could cause death or injury, and that after the Barber incident, he had recommended an engineering change to prevent release of vapors into the atmosphere.

Other witnesses testified that Texaco had in place on the sour water tank a sign that stated "Warning: Poisonous Gas. Stay Out of Area"; and warned its own employees of the danger of working near the tank. The B & B employees were working in the area which the parties stipulated was in Texaco's exclusive control and supervision, under a Texaco-issued "safe work permit." No one testified as to the contents of this specific permit, but the testimony revealed that safe work permits explain hazards in the work area and mandate the use of any safety equipment necessary. No safety equipment was provided to B & B employees.

From the foregoing evidence, the jury could reasonably infer that Texaco was negligent in allowing the tank to emit hydrogen sulfide gas, or in allowing workers into the area without adequate warning or protection. Further, the evidence presented as to the physical problems Barber suffered immediately after being exposed to the gas and the chronic nature of his problems thereafter, was sufficient to support the jury verdict that Texaco's negligence proximately caused Barber's injuries.

■ The record does not support submission of the issue of gross negligence to the jury, however. Gross negligence is differentiated from simple negligence by the mental attitude of the defendant: a plaintiff must show that the defendant knew about the danger, but demonstrated by his acts or omissions that he didn't care. *Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 920 (Tex.1981). This court has interpreted *Burk Royalty* as rejecting a bright line test for determining whether a defendant's conduct is grossly negligent in favor of one focused on "whether, in light of all the surrounding circumstances, the requisite mental state is shown." *Maxey v. Freightliner Corp.,* 665 F.2d 1367, 1374 (5th Cir. 1982) (en banc). Barber's counsel emphasizes Texaco's knowledge of the emissions and Mr. Thompson's statement that Texaco was not worried about emissions. However, the evidence showed that although Texaco designed the tank to emit hydrogen sulfide, it installed a warning sign and a monitoring and alarm system to keep the emissions at a safe level and to reduce the danger that workers would be exposed to emissions. Notwithstanding whether these steps were inadequate or whether Texaco was negligent in allowing any emissions, a jury could not reasonably find from this evidence such want of care as would amount to "conscious indifference" to the rights of others, *id.,* required by the Texas courts for a finding of gross negligence.

■ Texaco's remaining claims are without merit. The trial court's instruction on the theory of *res ipsa loquitur* must be upheld if there is a rational basis in the evidence from which the jury could find the prerequisite elements of the doctrine, as defined by state law. *Kicklighter v. Nails by Jannee, Inc.,* 616 F.2d 734, 740 (5th Cir. 1980). The necessary elements under Texas law are:

(1) The character of the accident is such that it would not ordinarily occur in the absence of negligence; and

(2) The instrumentality causing the injury is shown to be under the management and control of the Defendant.

*Marathon Oil Co. v. Sterner,* 632 S.W.2d 571, 573 (Tex.1982). Texaco stipulated that it had exclusive control of the sour water tank. The jury could rationally conclude from the evidence that the accident would not have happened absent Texaco's negligence, and was not due to mechanical failure (a theory which Texaco now urges but which it did not attempt to prove at trial). Moreover, the trial court instructed the jury both on the elements of negligence and on the theory of *res ipsa loquitur,* which raises a presumption of negligence. Our conclusion that the evidence supports a finding of negligence renders any error in the trial court's instructions harmless.

■ Texaco also claims that the trial court erred in rejecting Texaco's requested instruction that the mere fact that an injury occurred on its premises is not enough to support liability. The court instructed the jury that:

Texaco, as a possessor of land, is subject to liability . . . if, and only if, Texaco [knew] or in the exercise of reasonable care, should have discovered the condition and should realize that it involved an unreasonable risk of harm.

Secondly, fails to exercise reasonable care to protect those persons against the danger.

This instruction adequately conveyed to the jury the controlling law on the issue and the principles contained in the requested instruction; therefore, the court did not err in refusing the proposed instruction. *See Ullman v. Overnite Transport Co.,* 563 F.2d 152, 157 (5th Cir.1977).

Finally, Texaco alleges error in the trial court's refusal to submit the issue to the jury of the negligence of Barber's employer, a "subscribing employer" under the Texas Worker's Compensation Act, Tex. Rev.Civ.Stat.Ann., art. 8306 *et seq.* (Vernons 1967). Texaco sought submission of this issue not for the purpose of obtaining contribution or indemnification, which is clearly forbidden by Texas law, *see Paradissis v. Royal Indem. Co.*, 507 S.W.2d 526, 529 (Tex.1974); *Grove Mfg. Co. v. Cardinal Constr. Co.*, 534 S.W.2d 153, 156 (Tex.Civ. App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.); *Superior Commercial Carpet Service, Inc. v. American Chain & Cable Co., Inc.*, 623 S.W.2d 747, 749 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.), but for the purpose of determining the percentage of negligence attributable to Texaco. The Texas Supreme Court has recently decided this issue adversely to Texaco's position. *See Varela v. American Petrofina Co.*, 658 S.W.2d 561 (Tex.1983). Therefore, we must reject this allegation of error.

For the reasons given above, we affirm the trial court judgment of negligence, and reverse the finding of gross negligence and the concomitant award of $50,000 in punitive damages.

AFFIRMED IN PART AND REVERSED IN PART.