Joyce WELLS, Plaintiff-Appellee,

v.

HICO INDEPENDENT SCHOOL DISTRICT, Etc., et al., Defendants-Appellants.

Veriena BRAUNE, Plaintiff-Appellee,

v.

HICO INDEPENDENT SCHOOL DISTRICT, Etc., et al., Defendants-Appellants.

No. 82–1468.

United States Court of Appeals, Fifth Circuit.

July 16, 1984.

Naman, Howell, Smith & Lee, Beverly Willis, Jerry P. Campbell, Waco, Tex., for defendants and appellants.

Murray Watson, Waco, Tex., for defendants and appellants and amicus curiae Tex. Ass'n of School Boards, et al.

Kelly Frels, Timothy T. Cooper, Houston, Tex., for amicus curiae Tex. Ass'n of School Boards et al.

Bob Hall & Associates, Robert E. Hall, Houston, Tex., Glasgow & Jones, Robert J. Glasgow, Stephenville, Tex., Julia Penny Clark, Gary L. Sasso, Washington, D.C., for Wells and Braune.

Before RUBIN, GARWOOD, and JOLLY, Circuit Judges.

GARWOOD, Circuit Judge:

This section 1983 case involves two elementary school teachers who alleged that the nonrenewal of their employment by the Hico Independent School District violated their constitutional rights under the First and Fourteenth Amendments. Judgment was rendered for them based on jury answers in their favor to special interrogatories. Defendants, the District, its seven Board members, its Superintendent, and the Principal of its single elementary school, appeal and raise several evidentiary and procedural issues. We find that defendants have failed to properly preserve their claims of error on most issues. We sustain the district court's judgment on plaintiffs' First Amendment claims. However, we reverse on the Fourteenth Amendment due process property interest claims, and reverse and remand on the liberty interest claims. As a result, the judgment must be modified to delete damages for the failure to hold a hearing. We also hold that the judgment must be modified to delete the award of punitive damages against the individual defendants.

## I.

### FACTS

Plaintiffs-appellees Veriena Braune and Joyce Wells had taught elementary school in the Hico Independent School District for thirteen years and five years, respectively, when the School Board failed to renew their contracts at the end of the 1977–1978 school term.

The evidence at trial respecting events preceding plaintiffs' nonrenewal largely concerned the School's "Right to Read" program, a federally funded effort to combat illiteracy. In 1974, the Hico School Board elected to participate in this program and, on the recommendation of Superintendent of Schools defendant Harold Walker, chose Mrs. Braune as program director. Mrs. Braune continued to teach first grade full time after assuming the new responsibility. Under her leadership, the program received favorable publicity, and Hico was selected as a demonstration site by the Texas Education Agency (TEA). In addition, Mrs. Braune was personally commended by Elementary School Principal, defendant Frank Bonner, for her work with Right to Read.

All did not go well with the program, however. Although many teachers, including Mrs. Wells, who was teaching third grade when the program was initiated, shared Mrs. Braune's commitment to and enthusiasm for Right to Read, some did not. This latter group apparently included primarily the teachers for the upper grades, i.e., fourth through sixth. In an evaluation conducted in the spring of 1977, these teachers criticized the results achieved in the program.

Mrs. Braune also increasingly came to believe that the administration was not giving the program adequate support. In 1976 for example, she believed that teachers actively participating in the program received unfair performance evaluations. She asked for and received permission to add letters of commendation to these teachers' files. Moreover, there was evidence that she and other teachers who were using the program experienced difficulty in receiving adequate supplies and equipment for their classrooms. Mrs. Braune believed that these problems led to the resignation of one of the key teachers in the program in 1976 and to the transfer of Mrs. Wells to the migrant program at the end of 1977. In August 1977, Mrs. Braune resigned as director of the Right to Read program, indicating that she could not "continue in this capacity without more support from administration and faculty."

In January 1978, Mrs. Braune was contacted by a School Board member about her difficulties with Right to Read. A meeting followed among Mrs. Braune and most School Board members at her home. She also wrote a letter to the Board requesting to formally appear before them on this issue. The Board granted her request and she made a presentation at its regular meeting on January 30, 1978. Three other teachers accompanied her: Mrs. Wells, who had transferred to the migrant program at the beginning of the school term; Mrs. Rone, who taught second grade; and Mrs. Harmon, who taught kindergarten. At the meeting, Mrs. Braune spoke about problems with the program, including the perceived lack of administration and teacher support. She read aloud an evaluation of Mrs. Wells from 1975–1976 (two years earlier) to support her contention that teachers active in the program received discriminatorily low ratings. The next teacher evaluations of Mrs. Wells and Mrs. Braune were completed in early April and reflected low ratings in several categories for each. Prior to this time, Mrs. Braune had received consistently high ratings.[1] Mrs. Wells, with the exception of the 1975–1976 term, had also received generally high ratings.

Both teachers were distressed by their evaluations. Mrs. Braune's husband was also quite upset and confronted her principal, defendant Frank Bonner, while Bonner was driving to school. Descriptions of this confrontation varied at trial, but it appears at least certain that Principal Bonner was badly shaken as a result. He offered to tear up the evaluations of Mrs. Braune and Mrs. Wells. Mrs. Braune declined. Both teachers requested a hearing before the Board on their evaluations.

On April 14, after the incident involving Mr. Braune, a group of teachers at Hico filed a grievance with the School concerning "pressures and tensions" that were "causing factions among the faculty, administration and community." Both the grievance and the subject of contract renewals for the following school year were scheduled for the Board meeting the following Monday, April 17. The teachers who signed the grievance appeared at the meeting and expressed concerns about several issues, including the confrontation between Mr. Braune and Principal Bonner and several incidents between Mrs. Wells and other teachers. Although discussing contract renewal at the April 17 meeting, the Board deferred determination of this issue until April 20. At that time Board members decided to rehire all teachers except Mrs. Braune, Mrs. Wells, and a coach. The Superintendent of Schools, Mr. Walker, had not recommended renewal of Mrs. Braune's contract, but advised the Board that he would make the effort to work with her if the Board should renew it. Walker did recommend the nonrenewal of Mrs. Wells. Neither Mrs. Wells nor Mrs. Braune were afforded a hearing by the Board regarding either their evaluations or the nonrenewal of their contracts. However, they were allowed to file a grievance concerning this matter, and they subsequently received a hearing before the Board and then pursued their complaints administratively up to the Texas Commissioner of Education.[2] They did not prevail in any of the administrative proceedings.

On June 26, 1981, before completing their administrative appeals, the plaintiffs brought individual lawsuits under section 1983, alleging violations of their constitutional rights of free speech and procedural due process in connection with their nonrenewal as teachers. They brought their suits, which were consolidated before trial, against the Hico Independent School Dis-

---

1. It was conceded at trial that both her peers and her supervisors considered Mrs. Braune to be an exemplary teacher—at least before the 1977–1978 term. In 1976, Superintendent Walker recognized her performance by nominating her for an award as an "Outstanding Teacher of Public Education."

2. In view of our disposition of the liberty and property interest claims and the failure of defendants to adequately raise the issue below or on appeal, we do not reach the question of whether these post-nonrenewal hearings afforded plaintiffs all the process they may have been constitutionally due.

trict, its Board of Trustees, Hico Superintendent Walker, and Elementary School Principal Bonner. In response to special interrogatories, the jury found that the plaintiffs' exercise of their First Amendment rights was a substantial or motivating factor in the decision not to renew their contracts and that the defendants would not have made this decision in the absence of these protected activities. The jury also found that plaintiffs had a property interest in grievance and evaluation policies of the School District and that they were deprived of their liberty interests by the nonrenewal or the processing of the April 14 teacher grievance.[3] It found damages for each plaintiff, including punitive damages against all the individual defendants. Defendants stipulated as to lost wages. The court then entered judgment in the total amount of $112,858 for Mrs. Braune, plus $9,000 in punitive damages against the individual defendants, and a total of $89,670 for Mrs. Wells, plus $9,000 punitive damages against the individual defendants. The court also permanently enjoined the School District from refusing to reinstate the plaintiffs as teachers and ordered other actions related to reinstatement. This appeal followed.

3. The court had instructed the jury that the nonrenewal of the teachers' contracts and the processing of the grievance brought by the other teachers did not comport with procedural due process. In view of our disposition, we do not determine the propriety of these instructions.

4. The absence or presence of a property interest does not affect a First Amendment claim. "Even though he could have been discharged for no reason whatever, and had no constitutional right to a hearing ... he may nonetheless establish a claim to reinstatement if the decision not to rehire him was made by reason of his exercise of constitutionally protected First Amendment freedoms." *Mount Healthy City Board of Education v. Doyle,* 429 U.S. 274, 283, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977).

5. Appellants raised this issue for the first time in a Motion for Leave to File Supplemental Brief filed only a few days before oral argument in this case. *Connick v. Myers* was decided after the district court's decision, but some five months prior to submission of appellants' motion. Because of *Connick*'s potential relationship to plaintiffs' First Amendment claim, we give limited consideration to this aspect of the

## II.

### FIRST AMENDMENT

■ Appellants attack the verdict and judgment upholding the Plaintiffs' First Amendment claim on three grounds.[4]

### Sufficiency of the Evidence

■ Two of these grounds relate to the sufficiency of the evidence. Appellants first claim that there is insufficient evidence that plaintiffs' protected speech was a substantial or motivating factor in their nonrenewal and that the evidence conclusively shows that the School District would have made the same decision absent the protected speech. *Mount Healthy City Board of Education v. Doyle,* 429 U.S. 274, 285–86, 97 S.Ct. 568, 575–76, 50 L.Ed.2d 471 (1977). Next, appellants assert the evidence conclusively establishes that plaintiffs' speech pertained to no matters of public concern, but only to matters of exclusively personal interest, and was hence, under *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), not protected for purposes of personnel decisions.[5]

argument in appellants' supplemental brief. We do not, however, address a second issue also raised by appellants in the supplemental brief: that they should receive qualified immunity because *Connick* has changed the protection afforded public employees under the First Amendment. The qualified immunity defense was not raised in any form below or previously in this Court, and is not properly before us. Moreover, because so far as here relevant *Connick* did not broaden the sphere of conduct protected by the First Amendment, any of the plaintiffs' activity here which was so protected after *Connick* also would have been protected before that decision. For this reason, *Connick* did not change the assessment a court would make in considering a qualified immunity defense in this case: whether the defendants knew or reasonably should have known that their conduct was unconstitutional. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). We express no opinion regarding whether or not the appellants' qualified immunity defense, if properly raised in the district court, would have had merit.

However, appellants did not at any time move for a directed verdict, nor did they assert any deficiency in the evidence on the First Amendment claim by any motion or request for relief prior to the jury's commencement of its deliberations.[6] They did not object to the submission of any of the interrogatories pertaining to the First Amendment on the grounds that they were not supported by the evidence, or on any other ground, and they made no relevant objection to the portions of the charge authorizing the jury to find for the plaintiffs on their First Amendment claims. Appellants made no motion for judgment notwithstanding the verdict or for a new trial.

This Court has held repeatedly that the sufficiency of the evidence supporting jury findings is normally not reviewable on appeal unless the party seeking review has made a motion for a directed verdict in the district court. *Little v. Bankers Life and Casualty Company*, 426 F.2d 509, 510 (5th Cir.1970); *Quinn v. Southwest Wood Products, Inc.*, 597 F.2d 1018, 1024 (5th Cir.1979). This rule serves the salutary purpose of preventing "litigants from gambling that the jury will rule in their favor, while reserving the option of challenging the sufficiency of the evidence on appeal should the jury rule against them." *Hall v. Crown Zellerbach Corporation*, 715 F.2d 983, 986 (5th Cir.1983). "Similarly, the litigant who has not moved for a directed verdict in the trial court must have been of the view that the evidence made a case for the jury; he should not be permitted on appeal to impute error to the trial judge for sharing that view." *Little*, 426 F.2d at 511.

Because appellants wholly failed to in *any* manner preserve the issue of sufficiency of the evidence to support plaintiffs' First Amendment claims, we must affirm the jury verdict in this respect if there is *any* evidence to support it. *Hall*, 715 F.2d at 986. Plaintiffs satisfy this minimal threshold.

Mrs. Wells and Mrs. Braune's speech, particularly in connection with their appearance before the School Board, concerned the Right to Read program, a federally funded program being administered through the TEA. The record reflects that, even prior to Mrs. Braune's presentation, this program was a subject of debate in the community: some parents thought it was effective, some did not. At least one Board member, who had a student in Mrs. Braune's class, had expressed his reservations to the Superintendent. Another Board member initiated a meeting at Mrs. Braune's home regarding this issue. On Mrs. Braune's suggestion, the meeting was expanded to include other members. At the January 30 public meeting, Mrs. Braune presented her understanding of the commitment by the School District to the program, her concerns that Right to Read was not receiving adequate support from the School Administration, and her perception that the concept of the program—individualized instruction—was the key to improving education. Following the presentation to the Board by Mrs. Braune, other individuals also expressed their opinions about the program. Because of this widespread public interest, the Board invited representatives from TEA to present additional information on the Right to Read program.

There is plainly at least *some* evidence that a material portion of Mrs. Braune's speech pertained to matters of public concern, and did not relate only to matters of exclusively personal interest, within the rule of *Connick*. The same is true respecting Mrs. Wells. There is likewise at least *some* evidence that this protected speech of plaintiffs was a motivating factor in their nonrenewal. Nor does the evidence conclusively show that nonrenewal would have occurred absent such protected speech. For example, Mrs. Braune and Mrs. Wells showed that they received poor evaluations about two months following the January 30

---

**6.** Nor did their motion for summary judgment pertain to the First Amendment claims. *See*

notes 9 & 10, *infra.*

School Board meeting. In each of the evaluations, Principal Bonner made negative comments about their participation at this meeting. Further, there was testimony that Superintendent Walker was disturbed by their appearance before the Board. Appellants point to several items of testimony that indicate the Board did not renew the plaintiffs' contracts for legitimate reasons not connected with their exercise of their First Amendment rights. The jury, however, decided otherwise and, under the restricted standard we must use, there is evidence to support its verdict.

Applying the distinctly limited standard of review applicable where appellants have wholly failed to in any way properly preserve their challenges to the sufficiency of the evidence to sustain the plaintiffs' First Amendment claims, we overrule their assertions in this respect.

### Instructional Error

■ Appellants' final assertion of error with respect to the First Amendment claims relates to a portion of the district court's charge concerning the "protected" nature of unrest, dissension, or discord "proximately resulting" from plaintiffs' exercise of their First Amendment rights. Appellants, however, made no objection whatever to this or any related portion of the charge. Because appellants did not object to the instruction below, "we cannot consider it on appeal, Fed.R.Civ.P. 51, unless the error is so fundamental as to result in a miscarriage of justice." *Whiting v. Jackson State University*, 616 F.2d 116, 126 (5th Cir.1980). Appellants do not meet this stringent standard.

Though we are inclined to believe that the complained of instruction is overly broad and confusing, we do not consider that these deficiencies are so fundamental as to have resulted in a miscarriage of justice under the circumstances of this case. Accordingly, *Schneider v. City of Atlanta*, 628 F.2d 915 (5th Cir.1980), does not require reversal here. Unrest and discord resulting from the exercise of First Amendment rights do not clearly appear to have been a central factual dispute at trial. Appellants' factual theory of the case was that Mrs. Wells was not renewed because of continuing problems with staff relations, which they claimed were essentially unrelated to, and largely *antedated*, plaintiffs' appearance before the Board on January 30, 1978. With respect to Mrs. Braune, appellants' factual theory was basically that her nonrenewal resulted from Mr. Braune's confrontation with Principal Bonner. That confrontation does not seem to be properly characterized as something "proximately resulting" from Mrs. Braune's exercise of her First Amendment rights, and there is no clear indication that Mrs. Braune took the position at trial that it was. Rather, Mrs. Braune's claim at trial seems to have been that this was not *in fact* the reason for her nonrenewal. If objection had been made, the district court surely should, and doubtless would, have clarified the instruction so as to make plain that its general language did not embrace the unfortunate incident between Mr. Braune and Principal Bonner. However, the theoretically possible harm arising from this kind of imprecision and generality in an instruction is the very kind of matter which Rule 51 requires counsel to call to the district court's attention. The absence of objection is likewise a good indication that trial counsel did not believe the instruction was *actually* harmful, no matter how theoretically in error it may have been.[7] As it does not clearly appear that the claimed deficiencies in the challenged

---

7. We observe that sometimes the prejudice from an erroneous part of the charge may appear from the jury arguments. Here, they are not included in the record before us. Having failed to object to the instruction, it was appellants' burden to demonstrate to us that the claimed deficiencies in the instruction resulted in a miscarriage of justice. Since they did not bring forward the jury arguments as a part of the record on appeal, we are entitled to presume that they furnish no special support for appellants' claim and are consistent with our view that the record does not clearly demonstrate that unrest and discord proximately resulting from the protected speech were a significant factual dispute in the case. Cf. *Whiting v. Jackson State University*, 616 F.2d 116, 127 (5th Cir.1980).

instruction have resulted in a miscarriage of justice, we decline to otherwise review appellants' complaints in this respect because of their total failure to comply with Rule 51.

### III.

### DUE PROCESS

■ Plaintiffs were entitled to a hearing on the decision not to renew their contracts only if they had a protected property interest in continued employment or if the non-renewal deprived them of a liberty interest. *Board of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *Burris v. Willis Independent School District, Inc.*, 713 F.2d 1087, 1090 (5th Cir.1983). Appellants claim that, contrary to the jury findings, Mrs. Braune and Mrs. Wells had neither. We agree, at least in part, and reverse on the due process

property interest. We do not reach the sufficiency of the evidence respecting the liberty interest, but reverse and remand as to it on other grounds.

### A. PROPERTY INTEREST

■ In response to interrogatories, the jury found that Mrs. Braune and Mrs. Wells had a property interest "arising out of an express or implied contract with the Hico Independent School District providing that the District would follow its rules concerning evaluations or grievances."[8] Appellants' primary contention is that there was insufficient evidence to support submission of this issue to the jury.[9]

Although appellants did not move for a directed verdict in this case, they did object below to the court's charging the jury on the property interest theory on the basis that the evidence did not show such an interest.[10] It is well-established that a jury

8. The jury also found that the grievance by the other teachers was directed at these two plaintiffs and that the evaluation procedures applied to them.

9. Appellants also argue that the district court erred in failing to grant their motion for summary judgment on both due process issues and ask us to reverse the decision below on this basis. We decline to do so. Although the district judge did not formally rule on the summary judgment motion until after the close of evidence and before presentation of the charge to the jury, the motions for summary judgment as to each of the plaintiffs were made, renewed, and argued before commencement of trial. Once trial began, the summary judgment motions effectively became moot. Appellants make no contention that they relied on the district court's delay in giving its formal ruling on the summary judgment motions, and it is doubtful such a contention would be persuasive in any event, at least absent some indication in the record that the court expressly considered all evidence introduced during the trial in denying the motions or reflecting an explicit communication between court and counsel that either was treating the motion for summary judgment as a motion for directed verdict. As this Court has held:

"The saving of time and expense is the purpose to be attained by a summary judgment in a proper case. When in due course the final trial is had on the merits it becomes the best test of the rights of the movant. If he wins on the trial he has his judgment. If he loses on a fair trial it shows that he ought not to have

any judgment." *Woods v. Robb*, 171 F.2d 539, 541 (5th Cir.1948).

We find no reason here to depart from this commonsense approach.

10. Their objection was:

"The next objection is on page 15. Defendants object on page 15 to the Court's description of an inquiry [*sic*], the Court's description of a property interest in her employment in that the evidence clearly shows that both Plaintiffs were non-tenured teachers with no contractual expectation of future employment and that the Court has imposed upon these Defendants a property interest in a grievance procedure and evaluation when none is required or exists by law."

The instruction objected to reads as follows:

"In order to find an express or implied contract, you must find from a preponderance of the evidence that there was an implied or express contract between Plaintiff(s) and the HICO INDEPENDENT SCHOOL DISTRICT providing that the SCHOOL DISTRICT would comply with its own published rules with respect to grievances and/or evaluations.

"If you find by a preponderance of the evidence that the evaluation rules and/or grievance complaint (Plaintiffs Exhibits 22 & 34) covered VERIENA BRAUNE, and if you find by a preponderance of the evidence that there was either an express or implied contract between VERIENA BRAUNE and the SCHOOL DISTRICT that the DISTRICT would abide by its own rules with respect to grievances and/or evaluations, then you may con-

"should be instructed on a legal theory only if the evidence adduced at trial is sufficient to justify such an instruction." *Foster v. Ford Motor Co.*, 621 F.2d 715, 717 (5th Cir.1980). *See also, Barber v. Texaco, Inc.*, 720 F.2d 381, 384 (5th Cir. 1983); *Kicklighter v. Nails by Jannee, Inc.*, 616 F.2d 734, 740 (5th Cir.1980) (giving of *res ipsa loquiter* instruction is error if evidence does not provide a "rational" basis for the jury to determine that the elements required under the doctrine are present). For this reason, we must determine whether there was sufficient evidence of a property interest for the district court to have properly allowed the jury to consider that issue.

■ Whether a property interest exists must be determined by reference to state law. *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982) ("The hallmark of property ... is an individual entitlement grounded in state law, which cannot be removed except 'for cause.' "). Under Texas law, a school district may adopt the continuing contract provisions afforded by section 13.101 of the Texas Education Code,[11] or it may instead offer fixed term contracts under section 23.28. Tex.Educ. Code Ann. § 23.28 (Vernon 1972). *Bowen v. Calallen Independent School District,*

603 S.W.2d 229 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). It is undisputed that Hico operated under the latter, and that Mrs. Wells and Mrs. Braune each worked under a one-year contract.

■ Their claim, however, is that policies and procedures adopted by the School, specifically those relating to grievances and evaluations, gave them an expectation of continued employment.[12] The Supreme Court has recognized that a state institution may, through its policies, give rise to a state law implied contractual right based on "mutually explicit understandings." *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972); *Bishop v. Wood*, 426 U.S. 341, 344–46, 96 S.Ct. 2074, 2077–76, 48 L.Ed.2d 684 (1976). *See also White v. Mississippi State Oil and Gas Board*, 650 F.2d 540, 543 (5th Cir.1981). In *Burris* the plaintiff had claimed before the district court that he had a property right because of school policies and procedures in a district that had not adopted the continuing contract law. The district court disagreed and entered a directed verdict for the defendants. We affirmed the district court's determination, concluding that, under Texas law and the circumstances of that case, a property right of this nature could not be implied. 713 F.2d at 1091. In reaching this conclusion, we relied on a Texas state court decision indicating that a tenure policy by a

---

clude that VERIENA BRAUNE had achieved a property interest in her employment: that is, a contractual right that HICO INDEPENDENT SCHOOL DISTRICT would comply with its own rules. Similarly, if you find by a preponderance of the evidence that the evaluation rules and/or grievance complaint (Plaintiffs Exhibits 22 & 34) covered JOYCE WELLS, and if you find by a preponderance of the evidence that there was either an express or implied contract between JOYCE WELLS and the SCHOOL DISTRICT that the DISTRICT would abide by its own rules with respect to grievances, and/or evaluations, then you may conclude that JOYCE WELLS had achieved a property interest in her employment: that is, a contractual right that HICO INDEPENDENT SCHOOL DISTRICT would comply with its own rules."

We find the appellants' objection adequate to raise the claim that the evidence of a property

interest was insufficient to support submittal of that ground of recovery, particularly in view of their pending, unresolved motion for summary judgment. While we do not independently review the denial of that motion, we believe it provided relevant context to the district court and opposing counsel in assessing defendants' referenced objections to the property interest charge.

11. Tex.Educ.Code Ann. §§ 13.101 *et seq.* (Vernon 1972).

12. Appellants assert that plaintiffs may not claim a due process violation simply because in not renewing their contracts the School District failed to follow its own procedural rules. We read plaintiffs' claim, however, as asserting that these policies created an expectation of continued employment amounting to a property right.

school district that has adopted the nontenure provision of state law would be inconsistent with that provision. *Hix v. Tuloso-Midway Independent School District,* 489 S.W.2d 706 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n.r.e.). Appellees contend, however, that in a later case, *Bowen v. Calallen Independent School District,* 603 S.W.2d 229, 234–35 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.), the state court considered the merits of a similar claim by the plaintiff and arguably narrowed the holding of *Hix.*

We find that *Hix* and *Burris* control. *Burris* was decided three years after *Bowen,* and the *Burris* panel was plainly aware of *Bowen,* as it was cited in the opinion of the district court in *Burris.* *See Burris v. Willis Independent School District,* 537 F.Supp. 801, 804 (S.D.Tex.1982). In *Burris* we nevertheless held that *Hix* was "[t]he controlling Texas case." 713 F.2d at 1090. We are bound by *Burris* "without regard to any alleged existing confusion in state law," absent a contrary state law decision or statute rendered or enacted *subsequent to Burris. Broussard v. Southern Pacific Transportation Co.,* 665 F.2d 1387, 1389–90 (5th Cir.1982) (en banc).[13]

In holding that the practices and policies of Texas school districts which had not adopted the continuing contract law, Tex. Educ.Code Ann. § 13.101 *et seq.* (Vernon 1972), and were governed by section 23.28,

13. *Bowen* does not purport to narrow *Hix.* Indeed, *Bowen,* like *Hix* and *Burris,* involving a school district which had not adopted section 13.101, held that the plaintiff's pleadings, which alleged a one-year contract and school board policies similar to those relied on by plaintiffs in this case, "negate that plaintiff had any 'tenure' *de jure* or *de facto,*" and that "[p]laintiff has not alleged a 'property' interest in the renewal of her contract." 603 S.W.2d at 234.

While *Bowen* did determine there was no evidence the policies in question were violated, a *violation* would not seem to *create* a property interest which otherwise did not exist. *Bowen's* consideration of the violation issue appears directed at what it felt to be the rule of *Vitarelli v. Seaton,* 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959), and *Burnaman v. Bay City ISD,* 445 F.Supp. 927 (S.D.Tex.1978): that a federal due process violation could be predicated on no more than a state agency's having failed to follow its own procedural rules respecting employment. 603 S.W.2d at 233. This, of course, is an expression of federal, not state, law. As the Court pointed out in *Bishop v. Wood,* 426 U.S. 341, 345, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976), the property interest question is essentially whether under *state* law the employee has the substantive right to continued employment terminable only for cause, as distinguished from the state "merely conditioning an employee's removal on compliance with certain specified procedures." Moreover, *Bowen's* referenced remarks are overbroad as an expression of federal law. *Vitarelli* was decided on the federal administrative law principles enunciated in *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957), and the *Vitarelli* opinion eschewed any constitutional decision. *Id.* 359 U.S. at 539–40, 79 S.Ct. at 972–73. In *Board of Curators of the University of Missouri v. Horowitz,* 435 U.S. 78, 92 n. 8, 98 S.Ct. 948, 956 n. 8, 55 L.Ed.2d 124 (1978), the Court stated that *Service,* and *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954), on which *Service* relied, "enunciate principles of federal administrative law rather than of constitutional law binding upon the States." *Burnaman* was decided before *Horowitz* and relied in this respect on *Vitarelli, Service,* and *Accardi,* as well as on the portion of Justice Douglas' dissent in *Board of Regents v. Roth,* 408 U.S. 564, 582, 92 S.Ct. 2701, 2712, 33 L.Ed.2d 548 (1972), stating that "tenure is not the critical issue." *See Burnaman* at 936. *Burnaman* did not purport to hold that the employee had a property interest in continued employment, and the decision there ultimately rested on First Amendment grounds. *Id.* at 934–35. In *Vitarelli* the Court specifically recognized that the employee had no character of tenure. *Id.* 359 U.S. at 539, 79 S.Ct. at 972. Accordingly, we do not read the referenced passage in *Bowen* to mean that, as a matter of state law, the presence of school board *procedural* rules respecting teacher contract renewal created a substantive property right to continue in employment unless terminated for cause.

*Bowen* does also say that the "general rule" is that school board policies in effect "prior to making a contract of employment ... form part of the contract." *Id.* at 233. However, this does not state, and we do not read it as suggesting, that such policies could lawfully create "express, *de facto* or implied" tenure contrary to section 23.28 of the Texas Education Code and the decision in *Hix,* nor do the cases cited by *Bowen* involve that. We also note that the principal policies relied on by plaintiffs here were adopted well after their contracts were entered into, indeed only a few days before their evaluations and less than a month before their nonrenewal. We also observe that *Hix* was decided prior to execution of Mrs. Braune's and Mrs. Wells' contracts which were not renewed; *Bowen* was decided after the nonrenewal.

could not create an implied contractual right to reemployment, this Court in *Burris* (713 F.2d at 1091) quoted with approval from *Hix* (489 S.W.2d at 710) in part as follows:

" 'The tenure policy of the School District that plaintiff says was in effect, be it express, *de facto* or implied, would be contra to Article 2781 [the predecessor to section 23.28, Texas Education Code], and void, as it would have generated an automatic teacher contract renewal procedure, the effect of which would have resulted in a term that was not limited by three years but by the failure of the teacher to render satisfactory service.' "

We continued in *Burris* by stating:

"It is clear that, under Texas law, a school district which did not adopt the continuing contract law [section 13.101, Texas Education Code] ... may not adopt its own tenure plan for teachers employed under section 23.28." 713 F.2d at 1091.

In this regard, *Burris* cited with approval *Guerra v. Roma Independent School District*, 444 F.Supp. 812, 818 (S.D.Tex. 1977) (Gee, Circuit Judge), which made a similar holding. *See also Moore v. Knowles*, 377 F.Supp. 302 (N.D.Tex.1974), *aff'd*, 512 F.2d 72 (5th Cir.1975); *Doscher v. Seminole Common Consolidated School District No. 1*, 377 F.Supp. 1166, 1170–71 (N.D.Tex.1974); *Siler v. Brady Independent School District*, 553 F.2d 385 (5th Cir.1977).[14] *Cf. Ryan v. Aurora City Board of Education*, 540 F.2d 222, 227 (6th Cir.1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977) ("... a non-tenured teacher has no 'expectancy' of continued employment, whatever may be the policies of the institution, where there exists a statutory tenure system.").

Further, here it is plain, we believe, that the School District's *grievance* policy could not and did not implicate a property inter-est on the part of Mrs. Braune and Mrs. Wells. This written policy simply describes a process by which an employee (or third party) may present complaints through various levels of the administration and to the Board itself. It does not express a disciplinary process that the School District will use in addressing *its* problems with employees, but rather allows a means for employees (or others) to voice *their* complaints to the School District. This policy says *nothing* about either discharge or nonrenewal of any employee. As *Bowen* said concerning a similar policy, "[it] provides procedures for solving complaints, and nothing more." 603 S.W.2d at 235.

The remaining two written procedures or policies were adopted March 27, 1978, just a few days before plaintiffs' evaluations and less than a month before their nonrenewal. Neither expressly purports to create any rights in employees, nor to be for the purpose of enhancing job continuity or tenure. Neither specifically mentions teachers. The first of these is entitled "Evaluation of Personnel" and commences by stating, "The Board directs the Superintendent to maintain an effective program of staff evaluation." It provides that under such a program "[e]mployees shall be observed and evaluated at scheduled, periodic intervals" and "[in] the event that evaluation reveals that the employee's performance is not satisfactory," then the employee "shall be placed on probation for a specified period of time." At the end of the probation, if "the employee's performance has improved, the employee should be reevaluated and the probation removed." But "if there has been no improvement ... the supervisor should recommend that the employee be terminated in a manner appropriate to the terms of the employee's position with the District." Plaintiffs were not placed on probation. However, nothing in this policy purports either to limit the au-

---

**14.** In *Siler* we stated, "In *Moore* ... the court followed *Hix* in holding that a teacher who had taught in a school system for 16 years did not have de facto tenure even though there was testimony ... that the policy of the School Board was to continue teachers' contracts so long as 'they did not violate school policy and performed their jobs satisfactorily.' ... [T]he type of tenure whose protection Siler claims simply does not exist as a matter of Texas law." 553 F.2d 385 at 388.

thority of the Board to discharge any employee, or to speak to the Board's nonrenewal of a contract. The second policy is entitled "Termination of Employment" and states, "The Board directs the Superintendent to ensure that warning notices shall be given to any employee who violates Board policy," each warning to "state, specifically, the policy which has been violated."[15] Plaintiffs were not given a warning of the kind specified in this policy. However, nothing in this warning policy purports to limit the discharge of any employee to a violation of specific Board policy, or to speak to the Board's nonrenewal of a contract.

Similar policies of Texas school districts have consistently been construed to relate at most to discharge, not to nonrenewal. *See Moore*, 377 F.Supp. at 304, 308 (policy entitled "Termination of Contract and Procedure for Dismissal" stating, "The Board reserves the right to terminate a contract," and providing "the proper procedure in the dismissal of a teacher," held to apply only to "the termination or cancellation of a teacher's contract before the expiration of its term"); *Bowen*, 603 S.W.2d at 231–32, 235 (policy entitled "Re-employment and dismissal policy for professional personnel"; dismissal provisions held not to apply to nonrenewal); *White v. South Park Independent School District*, 693 F.2d 1163, 1166 (5th Cir.1982) ("... the written policies and regulations of the Board establish a procedure for the dismissal of an employee, but say nothing about the decision to renew a teacher's contract."). *See also Clutts v. Southern Methodist University*, 626 S.W.2d 334 (Tex.Civ.App.—Tyler 1981, writ ref'd n.r.e.) (one-year appointment as "Associate Professor without tenure," as a matter of law is not overridden by private university's by-law provision that all associate professors have tenure). Further, assuming the applicability of these policies to teachers, nothing in them "undertakes to

make ... [their] provisions the exclusive basis for dealing with" the question of whether a teacher should be employed in the year following expiration of the teacher's fixed contract term. *McMillian v. City of Hazlehurst*, 620 F.2d 484, 485 (5th Cir.1980) (referring to claim by police officer that police department regulations established by city ordinance created an employment property interest).

In light of the fact that plaintiffs' contracts were indisputably for only one year and that the District had not adopted the Texas continuing contract law, which is the method school districts are required to utilize in order to provide teachers tenure other than as afforded by the fixed terms of their contracts, it is wholly unreasonable to read entirely by implication into these policies, adopted less than a month before plaintiffs' nonrenewal, a purportedly binding restriction on the otherwise plenary power of the School Board to elect not to renew plaintiffs' contracts at the expiration of their terms. Our *Burris* decision controls. Neither the referenced policies nor any other evidence justifies the conclusion that plaintiffs had, under Texas law, any property interest in their teaching positions extending beyond the one-year terms of their contracts with this School District which operated under the statutory nontenure system. Because there was insufficient evidence of a property interest, the district court erred in submitting the property interest theory to the jury.

**B. LIBERTY INTEREST**

Appellants next contend that the district court erred in its charge to the jury on the plaintiffs' liberty interests. Specifically, they argue that the instruction given allowed the jury to find an infringement of plaintiffs' liberty interests on the basis of their nonrenewal alone. We find that the instruction was prejudicially misleading in this and related respects.

---

**15.** A second, separate part of this policy requires the Superintendent to ensure there is an "exit interview ... for every employee who leaves employment with the District" for any reason. Plaintiffs, and other nonrenewed teachers, were given exit interviews. The provision for exit interviews is, in our opinion, wholly immaterial both to whether plaintiffs had a property interest in their employment and to the proper construction of the other policies.

In analyzing a claimed instructional defect, we look not to see "whether the charge was faultless in every particular but whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues." *Ware v. Reed,* 709 F.2d 345, 348 (5th Cir.1983); *Smith v. Borg-Warner Corp.,* 626 F.2d 384, 386 (5th Cir.1980); *Coughlin v. Capitol,* 571 F.2d 290, 300 (5th Cir.1978). Our task is to consider the charge as a whole, in light of the allegations of the complaint and the evidence presented. *Ware,* 709 F.2d at 348; *Coughlin,* 571 F.2d at 300. If, after our review, we are left with a "substantial and ineradicable doubt" as to whether the jury had been properly guided, we cannot allow the instruction to stand. *Martin v. City of New Orleans,* 678 F.2d 1321, 1325 (5th Cir.1982), *cert. denied,* 459 U.S. 1203, 103 S.Ct. 1189, 75 L.Ed.2d 435 (1983), quoting *Dwoskin v. Rollins, Inc.,* 634 F.2d 285, 293 (5th Cir.1981). *See also* 9 Wright and Miller, *Federal Practice and Procedure, Civil* § 2558 (1978). Here, we have such a "substantial and ineradicable doubt."

To establish a liberty interest, an employee must demonstrate that his governmental employer has brought false charges against him that "might seriously damage his standing and associations in his community," or that impose a "stigma or other disability" that forecloses "freedom to take advantage of other employment opportunities." *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). *See Wells v. Doland,* 711 F.2d 670, 676 (5th Cir.1983). Mere proof that nonrenewal might make an individual less attractive to other employers does not, by itself, implicate a liberty interest. *Roth,* 408 U.S. at 574 n. 13, 92 S.Ct. at 2707 n. 13. *Dennis v. S. & S. Consolidated Rural High School District,* 577 F.2d 338, 340 (5th Cir.1978). ("[M]ere nonrenewal of a teacher's contract is not such a blight upon his good name, reputation, honor, or integrity as to constitute a deprivation of liberty.").[16] Nor is reputation alone a constitutionally protected interest, even though state law may create an action for defamation. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Rather, the stigma must be imposed by the state in connection with its denial of a right or status previously recognized by state law, such as the nonrenewal at issue here, though loss of a property interest (such as tenured employment) is not required. *Dennis,* 577 F.2d at 341–42; *Wells,* 711 F.2d at 676 (the stigmatization must be "in or as a result of the discharge process").[17] The employee must also show that "the governmental agency has made or is likely to make the ... stigmatizing charges public 'in any official or intentional manner, other than in connection with the defense of [related legal] action.'" *Ortwein v. Mackey,* 511 F.2d 696, 699 (5th Cir.1975); *Wells* 711 F.2d at 676 n. 8. Moreover, the employee must not have received a meaningful hearing to clear his name.[18] *Id.* The charges must be false. *Codd v. Velger,* 429 U.S.

---

**16.** Moreover, for a charge to be stigmatizing it must be worse than merely adverse; it must be such as would give rise to "a 'badge of infamy,' public scorn, or the like." *Ball v. Board of Trustees of Kerrville Independent School District,* 584 F.2d 684, 685 (5th Cir.1978), *cert. denied,* 440 U.S. 972, 99 S.Ct. 1535, 59 L.Ed.2d 788 (1979). *See also Burris,* 713 F.2d 1087 at 1092; *Huffstutler v. Bergland,* 607 F.2d 1090, 1092 (5th Cir.1979); *LaBorde v. Franklin Parish School Board,* 510 F.2d 590, 593 (5th Cir.1975); *Robertson v. Rogers,* 679 F.2d 1090, 1092 (4th Cir. 1982); *Press v. Board of Regents,* 489 F.Supp. 150, 155 (M.D.Ga.1980).

**17.** But it is not essential that the stigmatizing governmental charges *actually cause* the nonre-

newal, only that they occur in connection with, and be closely enough related so as to cause that action to be stigmatizing. *Owen v. City of Independence,* 445 U.S. 622, 633 n. 13, 100 S.Ct. 1398, 1406 n. 13, 63 L.Ed.2d 673 (1980); *Marrero v. City of Hialeah,* 625 F.2d 499, 519 (1980).

**18.** The remedy for a deprivation of liberty is a name-clearing hearing before the governing body. *White v. Thomas,* 660 F.2d 680, 685 (5th Cir.1981), *cert. denied,* 455 U.S. 1027, 102 S.Ct. 1731, 72 L.Ed.2d 148 (1982) (plaintiff to be afforded only opportunity to refute charge). It is not necessary that the hearing occur prior to publication of the stigmatizing charges. *In re Selcraig,* 705 F.2d 789, 796 (5th Cir.1983).

624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977).

With these principles as our guide, we examine the court's charge.[19] We find it to be deficient.

◼ The hearing of the other teachers' grievance, at which the grieving teachers made comments arguably adverse to plaintiffs, did not purport to constitute a hearing on the renewal of plaintiffs' contracts, and the comments by the other teachers did not purport to be charges by the School Board or the District administration.

There is no evidence that the Board members or the District administration did anything in this regard other than listen to the grievance of the other teachers; nothing purporting to constitute Board or District administration action on this grievance is shown to have occurred. Other than the fact that this "grievance" was publicly heard, there is nothing to indicate the Board or the District administration either publicized the statements made there by the other teachers or publicly linked the nonrenewal to such statements. Under this evidence, it certainly cannot be con-

**19.** The charge, in pertinent part, reads as follows:

"The Plaintiffs also claim that the Defendants have deprived them of their liberty without due process of law in violation of the Fourteenth Amendment. Specifically, Veriena Braune and Joyce Wells contend that the Hico Independent School District, acting by and through its Board of Trustees, its superintendent and its elementary school principal, failed to renew their contracts of employment partly because of accusations made against them in a grievance filed by several other teachers. They assert that the decisions about their employment were made without affording them a meaningful opportunity to confront these other teachers and to respond to the accusations contained in their grievance.

"They further assert that most, if not all, of the accusations against them were false and that, if they had been permitted to do so, they could have responded effectively to these accusations.

"They assert that, as a result of the school district's nonrenewal of their teaching contracts under those circumstances, and on those bases, their personal and professional reputations were damaged and that their ability to continue their career as teachers was substantially impaired.

" . . . .

"The Defendants deny that the actions, or failures to act, concerning the Plaintiffs' employment damage their personal or professional reputation[s]. They deny that anything the school district did, or failed to do, interfered with the Plaintiffs' ability to continue their career as teachers. Finally, Defendants assert that, even if Plaintiffs had been afforded due process, it would have availed them nothing because the accusations contained in the grievance against them were true and, thus, they would not have been able successfully to defend themselves even if they had been given the opportunity to do so.

"You must decide from a preponderance of the evidence whether the board's refusal to renew the teaching contracts of Veriena Braune and Joyce Wells deprived each or both of them of their liberty interest by imposing a stigma or injuring their reputation[s] so as to substantially impair their freedom to take advantage of other employment opportunities. In this connection you can consider whether each Plaintiff, or both of them, has been substantially impaired from taking advantage of other employment in area public schools, whether there has been public disclosure of the reasons for such nonrenewal, whether there are similar employment opportunities in the area, and whether other school systems were notified of the reasons for the nonrenewal."

Objections to the charge by the defendants below that are relevant to this issue are:

"Further objection with regard to page 10 is with regard to the third paragraph on the page under due process liberty interest. The language which reads, 'They assert that as a result of the school district's non-renewal.'

"Defendants object to this language for the reason that Defendants believe that the law requires that the reason for non-renewal be the basis of the damage to personal and professional reputations, and in this record Defendants object to the language used because any non-renewal would affect a teacher's future hiring, but the law holds that it has got to be a reason for non-renewal which would attach such a stigma and prevent appropriate liberty interest and that the reason must be published, and just the mere non-renewal allows the Plaintiff to go to the jury under a lesser burden than is required by law.

" . . . .

"Defendants further object on page 11 to the second complete paragraph on that page. The Court refers and uses the terms 'refusal to renew.' Defendants submit it should be the reason for the refusal to renew and object to the language used. It allows the Plaintiffs to go to the jury on a burden less than that which is required by law."

cluded that as a matter of law the statements made at the grievance hearing (assuming they were stigmatizing) constituted charges made by the School Board or the District administration so far in connection with and so closely related to the nonrenewal as to constitute the nonrenewal stigmatizing.[20]

■ The jury was not instructed that any stigmatizing "charges" against these plaintiffs must have been made or approved by the defendants and made (or likely to be made) public by them. With respect to the necessity that the charges be made (or likely to be made) public, the jury is merely told that they "*can consider ...* whether there has been public disclosure of the reasons for such nonrenewal." As to the necessity that the public disclosure be by the defendants, the jury is not instructed at all. Nor is the jury instructed on the necessity of a nexus between the "charges" at the other teachers' grievance hearing and the nonrenewal before the former could render the latter stigmatizing. The jury is, instead, simply asked whether the Board's refusal to renew deprived plaintiffs of a liberty interest, without being told what is *necessary* in order for that to be so. The potentially misleading aspect of the instruction in this respect is compounded both by the court's instruction, in another part of the charge, that the District did not provide due process to plaintiffs *either* in the processing of the other teachers' grievance *or* in the nonrenewal of

plaintiffs' contracts,[21] and by the "liberty" interrogatory form which asks whether the grievance *or* the nonrenewal imposed a stigma on plaintiffs.[22] In these circumstances, it was essential that the jury be instructed that nonrenewal was not stigmatizing of itself, a matter sufficiently raised, along with the publication requirement, in defendants' objections to the charge.

We are unable to determine on what basis the jury made its liberty interest decision. It is possible that the jury considered that the defendants were responsible for the accusations by the other teachers (assuming that they could be so responsible) and thus "made" stigmatizing public charges against the plaintiffs in the course of their nonrenewal.[23] It is equally possible, however, that the jury believed that the defendants were responsible merely for the nonrenewal decision and that this action alone was enough to implicate a liberty interest. There was testimony at trial to suggest that nonrenewal by itself can be harmful to a teacher's professional reputation. Further, while the law requires more than mere nonrenewal to find a liberty deprivation, we believe there is a general public commonsense perception that the loss of one's job can be stigmatizing in itself. For this reason, it is important that a court carefully instruct a jury on the legal requirements necessary for a liberty interest deprivation. The district court failed to do so here, despite defendants' objections. Accordingly, we must reverse

---

**20.** Reference was made at trial to the performance evaluations of the plaintiffs. Even if these evaluations were stigmatizing, however, the mere presence of derogatory information in a confidential file does not implicate a liberty interest unless the employer has made or is likely to make the stigmatizing charges public in any official or intentional manner. *Ortwein v. Mackey,* 511 F.2d 696, 699 (5th Cir.1975); *Wells v. Doland,* 711 F.2d 670, 676 n. 8 (5th Cir.1983). There is no evidence the Board or the District administration actually so made the performance evaluations public, and the jury was not instructed on the made or likely to make public theory, and hence could not have properly considered the evaluations in connection with the liberty interest claim.

**21.** Because of our resolution of this issue, we do not determine appellants' contentions regarding the merits of these due process instructions considered on their own.

**22.** We do not imply that the jury could *properly* find an infringement of a liberty interest based on the grievance alone; but that aspect of the matter was not preserved by proper objections.

**23.** We do not decide the legal validity of such a theory. Nor do we decide whether any "charges" made (at the grievance or in the evaluation) were serious enough to implicate a liberty interest. *See* note 16, *supra.*

and remand for a new trial on the liberty interest claim.[24]

## IV.

## DAMAGES

 Because of our resolution of the due process issues, we modify the judgment to delete that portion of each award attributable to these issues.[25] We also modify the judgment to set aside the award of punitive damages against the individual defendants (none were awarded against the District).[26] Punitive damages may be awarded against individual defendants in a section 1983 case. *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). A "reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law, should be sufficient to trigger a jury's consideration of the appropriateness of punitive damages." *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 1637, 75 L.Ed.2d 632 (1983).

 While we have upheld the judgment granting plaintiffs recovery on their First Amendment claims, there is absolutely no evidence that the individual Board members acted with malice or with a "reckless or callous disregard" for plaintiffs' rights in this connection. Board members visited Mrs. Braune at her home to discuss the Right to Read program. They allowed her to present her views to them and even arranged for additional discussion on the issue. The remarks attributed to Board members and cited by plaintiffs reflect some concern that Mrs. Braune perhaps did not present her concerns first to the District administration, but do not justify punitive damages. We have held that punitive damages may be awarded in section 1983 cases to deter or punish intentional violations of constitutional rights. *Shillingford v. Holmes*, 634 F.2d 263, 266 (5th Cir.1981). An award of punitive damages against the Board members clearly would not serve these twin goals of deterrence and punishment. However, given the evidence of

**24.** We do not consider the sufficiency of the evidence respecting the liberty interest claim, as defendants did not make any motion for directed verdict (or for a new trial) and their motion for summary judgment does not suffice to preserve the point (*see* note 9, *supra*).

Appellants' objection to the property interest portion of the charge (*see* note 10, *supra*) raised the contention that "the evidence clearly shows that both Plaintiffs were non-tenured teachers with no contractual expectation of future employment" and that no "property interest in a grievance procedure and evaluation ... exists by law," and accordingly was adequate under the circumstances to preserve for review the question of evidential sufficiency in that respect. By contrast, the objection to the liberty interest portion of the charge (*see* note 19, *supra*) was not based on what was or was not shown by the evidence, and rather assumes that the liberty interest question should be submitted, although under a different definition. Hence, the objection respecting the liberty interest charge cannot be said to present the contention that the evidence conclusively establishes there was no liberty interest infringement or that there was insufficient evidence to support any liberty interest submission to the jury. Accordingly, unlike the property interest objection, the liberty interest objection does not preserve the sufficiency of the evidence for appellate review.

Where the question of evidential sufficiency is not properly preserved "[o]ur consideration is limited to whether plain error has been committed which, if not noticed, would result in a manifest miscarriage of justice." *Little v. Bankers Life & Casualty Company*, 426 F.2d 509, 511 (5th Cir.1970). As we are in any event reversing and remanding the judgment on the liberty interest claim on another ground, consideration of whether there is any evidence to support the judgment on that basis is not necessary to prevent "a manifest miscarriage of justice," and we accordingly decline to rule on whether there is any evidence to support liberty interest recovery.

**25.** The jury awarded $25,000 to Mrs. Braune and $15,000 to Mrs. Wells for the School Board's failure to provide a due process hearing.

**26.** Appellants also contend that there is insufficient evidence to support the amount of actual damages awarded each plaintiff. We cannot review this issue, however, as defendants neither moved for a directed verdict nor in any manner or at any time asked the district court to review the award of actual damages for excessiveness nor otherwise ever took any action in the district court to present this issue. *Sam's Style Shop v. Cosmos Broadcasting Company*, 694 F.2d 998, 1005 n. 15 (5th Cir.1982). However, defendants did preserve their complaint as to punitive damages by objecting to the submission of such damages.

their more extensive and direct personal participation and the nature of the evaluations of plaintiffs, a somewhat closer question is presented as to Superintendent Walker and Principal Bonner. In these circumstances, and since we must in any event set aside the award of punitive damages on another ground and if there is another trial the evidence may differ, we decline to reach the issue of the sufficiency of the evidence in this respect as to Walker and Bonner. In determining the punitive damage award, the jury considered both the First Amendment claims and the due process claims brought by the plaintiffs. We cannot say whether the jury would have awarded punitive damages in the same amount—or even at all—in the absence of the due process claims. For this reason, we set aside the punitive damages portion of the judgment against Bonner and Walker, as well as against the individual Board members.[27]

## V.

### CONCLUSION

Accordingly, we reverse all plaintiffs' due process claims against all defendants and so much of the judgment in favor of plaintiffs as awards them actual damages for deprivation of due process ($25,000 to Braune, $15,000 to Wells) and as awards them any exemplary damages. We further direct the dismissal with prejudice of so much of plaintiffs' due process claims as are based on an asserted property interest in their employment, and of all plaintiffs' claims for exemplary damages against the individual Board members. Plaintiffs' claims for deprivation of due process in connection with asserted infringement of a liberty interest and all their claims for exemplary damages against defendants Walker and Bonner are reversed and remanded for further proceedings not inconsistent herewith. We decline to disturb any other aspect of the judgment below. The case is remanded to the district court for the entry of a modified judgment in conformity herewith and for such further proceedings as may be appropriate and not inconsistent herewith.

E. GRADY JOLLY, Circuit Judge, concurring in part and dissenting in part:

I fully concur with the majority in its holding that the district court's judgment on the plaintiffs' first amendment claims should be affirmed and its judgment on the due process property interest claims reversed. I dissent, however, from the panel's holding that the due process-liberty interest claims should be remanded, because I find no evidence in the record to support them. I would simply reverse the judgment with respect to those claims.

Although testimony presented at trial indicates that the grievance procedure was invoked by the plaintiffs' colleagues at least in part because of tensions and pressures in the school environment resulting from the conflict between the plaintiffs and others over the Right to Read program, the testimony does not support the plaintiffs' assertion that stigmatizing charges were made against them at the public hearing before the school board. Some of the board members testified at trial that they did not recall any names, including those of the plaintiffs, having been mentioned in connection with the grievance. Other board members testified that they were aware that the complaints were directed at the plaintiff. However, the plaintiffs offered *no* testimony which indicates that any specific false comments were directed at either of the plaintiffs which would deprive them of a liberty interest. Reading the evidence in the light most favorable to the plaintiffs, I can only conclude that the plaintiffs were characterized by their fellow teachers as overcritical and difficult to work with. Mere charges of uncooperativeness or inability to work harmoniously with colleagues made in relation to an employee's discharge do not deprive that indi-

---

**27.** As appellants have not challenged the injunction or the equitable remedy of reinstatement granted by the district court, we do not consider those issues.

vidual of his "freedom to take advantage of other employment opportunities" nor do they impugn that person's "good name, reputation, honor, or integrity."[1] The dismissal must be shown to have resulted in a "'badge of infamy,' public scorn, or the like." *Ball v. Board of Trustees of Kerrville Independent School District*, 584 F.2d 684, 685 (5th Cir.1978), *cert. denied*, 440 U.S. 972, 99 S.Ct. 1535, 59 L.Ed.2d 788 (1972). I find *no* evidence in the record before us that charges were made against the plaintiffs of which it can fairly be said that they "might seriously damage [the plaintiffs'] standing and associations in [their] community."[2] In addition, there is no evidence that the school board, merely by entertaining unfavorable comments by the plaintiffs' co-workers, gave any form of official imprimatur to these charges, a necessary foundation to a claim such as the one raised by the plaintiffs.

Because there was *no evidence* to support it, it was error for the trial judge to submit the plaintiffs' due process liberty interest claim to the jury, and the judgment below should be reversed *without remand* in this respect. Even though the defendants failed to question at trial the sufficiency of the evidence on the due process-liberty interest claim, it seems to me to be a manifest miscarriage of justice to require the defendants to submit to a second trial of a claim in support of which the plaintiffs produced no evidence at the first trial.

---

1. *See Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972).

2. *Board of Regents v. Roth,* 408 U.S. at 573, 92 S.Ct. at 2707.