Glen **HILL**

v.

**SILSBEE INDEPENDENT SCHOOL DISTRICT, and H.C. Muckleroy, in his individual and Official Capacities.**

Civil Action No. 1:95CV102.

United States District Court,
E.D. Texas,
Beaumont Division.

March 14, 1996.

Laurence W. Watts, Watts & Associates, Houston, Texas, for Plaintiff.

David Feldman, Dennie M. Feldman, Feldman & Associates, Houston, Texas, for Defendants.

### MEMORANDUM OPINION AND ORDER

JOE J. FISHER, District Judge.

**BEFORE THE** Court this day for consideration is the Motion to Dismiss and/or Motion for Summary Judgment filed by Defendants Silsbee Independent School District, and H.C. Muckleroy in his Individual and Official Capacities. The Court, having considered the Motion and the argument of counsel at hearing, concludes that the Defendants have conclusively established that there is no genuine issue of material fact concerning one or more essential elements of Plaintiff's First and Fourteenth Amendment claims and, therefore, renders its decision in accordance with the discussion below.

### I. Facts and Procedural History

The Plaintiff, Mr. Glen Hill ("Hill"), was employed as a teacher with the Silsbee Independent School District ("SISD" or "District") prior to 1990, and is still employed by SISD as a teacher. The Defendant, Mr. H.C. Muckleroy ("Muckleroy"), now retired, was the Superintendent of SISD in 1993, during which the events leading to Plaintiff's cause against SISD and Muckleroy occurred. Prior to his retirement after the 1992–1993

school year, Mr. Ray McGallion was the Athletic Director of SISD, and his wife, Rose McGallion was a long-time employee of SISD. The McGallion's daughter, Amy McGallion, also was employed by SISD as a teacher and volleyball coach. Shortly after Mr. McGallion retired from SISD, his wife passed away in September 1993.

During the 1993–1994 school year, the Plaintiff Hill worked for SISD pursuant to a two-year contract which encompassed the school years 1992–1994. In accordance with the terms of that contract, Hill was also assigned supplemental coaching duties as an assistant football coach under Coach Charlie Woodard, for which he received a stipend. The contract also provided that Hill was subject to reclassification, transfer, assignment and reassignment of positions or duties at any time during the contract term (Defendants' Motion for Summary Judgment (hereafter Defendants' Motion), Exhibit A–6). This cause of action arises out of Defendant Muckleroy's reassignment of Hill's supplemental coaching duties.

The reassignment of Hill's coaching duties resulted from Ms. Amy McGallion's complaint to Superintendent Muckleroy that Hill had made derogatory and offensive remarks concerning Mr. McGallion and his deceased wife. Specifically, on October 11, 1993, Amy McGallion reported to Defendant Muckleroy that Hill had made derogatory and offensive remarks concerning her parents, Mr. McGallion and his wife, and requested that Muckleroy take steps to end Hill's misconduct. The remarks that Hill was reported to have made during a conversation with other coaches regarding Mrs. McGallion's death, was to the effect that the "wrong one in the family died" and "the wrong one's in the box" (Defendants' Motion, Exhibit A). After being informed of the reported remark, Muckleroy scheduled a meeting for October 12, 1993 to address the situation.

Prior to the October 12, 1993 meeting, Ron Nash, Silsbee High School's principal, and Coach Charlie Woodard were sitting in the field house when Hill approached them and asked what the meeting was about. Principal Nash informed Hill that it concerned statements that he (Hill) reportedly made

concerning Mrs. McGallion's death, and recited the remark made by Mr. Hill that "the wrong McGallion was in the box". According to the affidavit of Charlie Woodard, Hill did not deny making the remark and stated that he had no excuse for the statement and would apologize to Amy McGallion. Those present during the October 12, 1993 meeting included Hill, Muckleroy, Amy McGallion, Coach Charlie Woodard, Ron Nash, and Bluford Hicks, SISD's personal director. Although Hill now declares that he cannot remember making the offensive statement even though he apologized for making Amy McGallion upset (Plaintiff's Response, Exhibit 2, page 98), the overwhelming evidence shows he did not deny making the statement during the meeting and that he could not justify the statement (Defendant's Motion, Exhibit A). Based upon this initial inquiry, Muckleroy informed Hill that he was suspended pending further investigation. Muckleroy continued to investigate the allegations against Hill during which several witnesses confirmed that Hill reportedly had made offensive remarks concerning Mr. McGallion and Mrs. McGallion's death. Additionally, Coach Woodard, Hill's immediate supervisor, asked for Hill's immediate resignation based on the reported remark being detrimental and disruptive to the coaching staff.

Based on Superintendent Muckleroy's review of the information gathered in the investigation, Muckleroy made the decision to relieve Hill only of his coaching duties but not his teaching duties (Defendants' Motion, Exhibit A). On October 14, 1993, Hill was given written notice of Muckleroy's decision to relieve Hill of his supplemental coaching duties. Hill received his full coaching stipend for the remainder of his contract term. Thereafter, Hill requested a hearing before the SISD Board of Trustee's regarding Muckleroy's decision, and retained an attorney for the hearing.

The SISD Board scheduled Hill's hearing for November 22, 1993 before the Board in an open meeting. Prior to the hearing, Hill was provided with a copy of the agenda to be followed during the hearing, as well as the list of potential witnesses the SISD adminis-

tration planned to call and a summary of their expected testimony. Additionally, Hill was informed of his right to (1) be represented by counsel, (2) present evidence and witnesses on his own behalf, and (3) confront and cross-examine the witnesses against him. However, at the hearing, Hill's counsel, would not proceed with the hearing in an orderly and professional manner and, therefore, the hearing was aborted.

Instead of requesting another hearing before the SISD Board of Trustees, Hill filed the instant action in the State District Court of Hardin County in May of 1994, alleging that his state constitutional rights had been violated. Hill asserted that he was reassigned because of previous comments he allegedly had made to Coach Woodard and Mr. Michael Day, Assistant Principal of Silsbee High School. These alleged comments concerned Hill's disapproval of certain SISD financial expenditures by Mr. McGallion, Hill's perceived conflict of interest concerning Mr. McGallion's position as Athletic Director and his children's employment with SISD, and abuse by other football coaches of SISD's prohibition of tobacco use policy. However, on February 16, 1995, the Texas Supreme Court in *City of Beaumont v. Bouillion*, 896 S.W.2d 143 (Tex.1995), held that, in Texas, violation of an individual's free speech state based constitutional rights does not give rise to an independent cause of action for damages.

Subsequent to the Texas Supreme Court's decision in *Bouillion*, Hill amended his State Court Petition alleging claims under 42 U.S.C. section 1983 for First and Fourteenth Amendment violations of the United States Constitution by the Defendants. The Defendants removed the case to the Federal District Court on February 27, 1995 based on federal question jurisdiction, 28 U.S.C.A. §§ 1331 (West 1993) and 1441(a) (West 1994). Shortly thereafter, the Plaintiff filed his First and Second Amended Complaint in which he alleges that the Defendants violated his freedom of speech rights under the First Amendment of the United States Constitution, and that Defendant Muckleroy denied his substantive and procedural due process under the Fourteenth Amendment (Plaintiff's Sec-

ond Amended Complaint). The Defendants filed their Motion to Dismiss and/or Motion for Summary Judgment on August 28, 1995 and Plaintiff filed his response on September 11, 1995. Thereafter, the Court held a hearing on Defendants' motion on November 8, 1995, at which time the Court took the motions under advisement, and allowed the parties to file Supplemental Briefs within seven days of the hearing. The Court, after considering the briefs and the argument of counsel, hereby renders its decision in accordance with the discussion below.

## II. Discussion

### A. Summary Judgment in Federal Courts

■ In the federal courts, a party is entitled to summary judgment if it can demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The purpose of a summary judgment motion is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial". *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citing Advisory Committee Notes to 1963 Amendment of Fed.R.Civ.P. 56(e), 28 U.S.C.App., p. 626). Summary judgment is not a "disfavored procedural short-cut, but rather an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action'". *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1). In assessing the proof, the court views the evidence in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. Finally, evidence on summary judgment may be considered to the extent that it is not based on hearsay or other information excludable at trial. *See Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir.1987). A photocopy of a document, attached to a sworn affidavit declaring that the photocopy is a true and correct copy of the original, is valid summary judgment evidence under Texas

law. *Resolution Trust Corp. v. Starkey,* 41 F.3d 1018, 1023 (5th Cir.1995), citing *Life Insurance Co. v. Gar–Dal, Inc.,* 570 S.W.2d 378, 380 (Tex.1978).

### B. Silsbee I.S.D.'s Liability Under Section 1983

■ Silsbee Independent School District is considered a local governmental body, and as such, it is clearly recognized that SISD "cannot be held liable under section 1983 on a theory of respondeat superior for the actions of its employees." *Monell v. Dept. of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). It is also clearly recognized that the District may only be held liable under section 1983 for a deprivation of the plaintiff's rights if that deprivation is inflicted pursuant to an official policy by the District.[1] *Monell,* 436 U.S. at 689–94, 98 S.Ct. at 2035–37; *Eugene v. Alief Indep. Sch. Dist.,* 65 F.3d 1299, 1304 (5th Cir.1995). Therefore, under *Monell,* Hill must allege that an "official policy or custom" of the District was a cause in fact of the deprivation of rights inflicted. *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036. The parties' dispute concerns the nature of Muckleroy's action. Hill claims that his reassignment by Muckleroy was retaliatory and that the SISD Board delegated final policy-making authority as to employee transfers to Muckleroy. Defendants contend that Muckleroy was not a "final policymaker" for purposes of imposing section 1983 liability upon the District and that Muckleroy's action was not unconstitutional.

■ The United States Supreme Court in *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123–24, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988), held that only the actions of public officials with final policy-making authority subject the [District] to liability. Additionally, the Supreme Court ruled that whether public officials (such as Muckleroy) have final

policy-making authority is a question of state law. *Praprotnik,* 485 U.S. at 123–24, 108 S.Ct. at 924. Thus, turning to the Hill's claim that the SISD Board delegated final policy-making authority to Muckleroy, the Court finds that Hill has failed to show that there was any official policy or custom of SISD which caused the alleged constitutional violation. Hill, in his Supplemental Response to Defendants' Motion for Summary Judgement, argues that Superintendent Muckleroy is a final policy-maker pursuant to Texas Education Code Section 11.201 (codifying Senate Bill 1, 1995 Legislature). However, this provision was effective as of May 30, 1995; Hill's alleged constitutional violation occurred in 1993. Therefore, Hill's argument in his Supplemental Response that Superintendent Muckleroy is the final policy-maker is inapposite. Under the law in effect at the time of Hill's reassignment, Texas Education Code Section 23.01 provided that the Board of Trustees of the district shall have the exclusive power to manage and govern the public free schools of that district. Similarly, in *Jett v. Dallas Indep. Sch. Dist.,* 7 F.3d 1241, 1245 (5th Cir.1993), the Fifth Circuit, citing Sections 23.01 and 23.26(b) & (d), held that, under Texas law, final policy-making authority in an independent school district rests with the district's board of trustees rather than with the superintendent. Thus, although Muckleroy may have been delegated the final decision-maker in cases in which an individual employee protests his reassignment, this does not mean that he was delegated the status of final policy-maker, much less final policy-maker respecting employee transfers. Therefore, based on the foregoing, only the actions of the Board of Trustees bind SISD for purposes of section 1983 liability, and not the actions of Superintendent Muckleroy.

---

1. The Fifth Circuit in *Johnson v. Moore,* 958 F.2d 92, 94 (5th Cir.1992) previously defined official policy as:

 1. A policy statement, ordinance, or regulation, or decision that is officially adopted and promulgated by the [school district] ... or by an official to whom the [school district] has delegated policy-making authority; or

 2. A persistent, widespread practice of [school district] officials or employees, which,

although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents the [school district] policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the [school district] or to an official to whom that body had delegated policy-making authority.

■ As stated above, the Court finds that Hill has provided no summary judgment evidence that SISD had an official policy or custom of retaliating against its employees for exercising their First Amendment freedom of speech rights; thus, he cannot establish section 1983 liability against the District. Even *assuming* that Hill could establish that his reassignment was unconstitutional, such proof would not support the inference that Muckleroy or SISD had a policy or custom of retaliating against its employees because they exercised their First Amendment free speech rights. *Campbell v. City of San Antonio,* 43 F.3d 973, 977 (5th Cir.1995) ("isolated violations are not the persistent, often repeated constant violations that constitute custom and policy as required for section 1983 liability"). Therefore, based on the above discussion, the Court finds that Hill's assertion of section 1983 liability against Defendant Silsbee Independent School District is without merit, and SISD is therefore entitled to summary judgment in all respects. Finally, because a cause of action against Superintendent Muckleroy in his official capacity is tantamount to a suit against the District itself, *Hafer v. Melo,* 502 U.S. 21, 24–27, 112 S.Ct. 358, 361–62, 116 L.Ed.2d 301 (1991), Hill's claims against Muckleroy in his official capacity are also without merit and require a finding that Muckleroy in his official capacity is not liable under section 1983 and, therefore, is entitled to summary judgement.

## C. Hill's First Amendment Claim & Muckleroy's Liability

■ Hill claims that his First Amendment free speech rights were violated resulting in his reassignment, because he commented on matters of public concern. While "a public employee may not be discharged for exercising his or her [First Amendment] right to free speech, it is clear that only certain speech is protected." *Thompson v. Starkville,* 901 F.2d 456, 460 (5th Cir.1990). Recently, the Fifth Circuit in *Fowler v. Smith,* 68 F.3d 124 (5th Cir.1995) clearly set forth the three-part test to determine whether a public employee's particular speech is protected by the First Amendment. According to the Fifth Circuit in *Fowler,* the public

employee must prove the following: First, that the speech must have involved a matter of public concern; Second, that the public employee's interest in commenting on matters of public concern must outweigh any injury his speech would cause to his public employer's interest in promoting the efficiency of its operations; and Third, the causation element, the employee's protected speech must have motivated the employer's decision to discharge the employee. *Fowler,* 68 F.3d at 126. If an employer would have reached the same decision without regard to the constitutionally protected speech, then the protected speech was not a motivating factor in the employer's decision. *Mt. Healthy City School District Board of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

■ Applying the three-part *Fowler* test and viewing the facts in a light most favorable to the nonmovant Hill, the Court finds that Hill fails to satisfy the third-prong of *Fowler.* As to the first prong, the Court must conclude that Hill did not make the reported remarks concerning Mr. Ray McGallion and the recent death of his wife, but that he did make the alleged statements criticizing certain public expenditures made by various District personnel and abuse of the tobacco policy. As to the second prong, the Court also must conclude that Hill's statements on public expenditures and abuse of the tobacco policy, constitute matters of public concern, and that Hill's interests in making the statements outweigh any injury caused to his employer's interest in promoting the efficiency of its operations. However, as to the third-prong, the Court finds that Hill's First Amendment claim must fail because he has not produced any evidence to support this element of the test, that Muckleroy was motivated to reassign Hill because of Hill's protected statements. Specifically, there is no evidence offered by Hill to rebut Defendants' evidence that Superintendent Muckleroy was not motivated by Hill's alleged protected statements. Nowhere in Hill's own affidavit (Plaintiff's Supplemental Response) does he aver that he ever disclosed or discussed these protected statement to Muckleroy; only that he discussed them with Mr. McGallion, Coach Woodard, or

his fellow coaches. Nor is there any direct evidence that Muckleroy knew that Hill was speaking out on the expenditures by SISD or the abuse of the tobacco policy. Additionally, Hill admits that he has no knowledge that anyone else ever informed or apprised Muckleroy or the District of his protected statements or concerns. On the other hand, Muckleroy's affidavit clearly avers that his decision to reassign Hill was based on the derogatory comment made by Hill[2], and that Muckleroy had no knowledge of the prior protected comments made by Hill. Therefore, it is clear that Muckleroy's motivation for reassigning Hill was based solely on Hill's derogatory statement concerning the death of Mrs. Rose McGallion.

While this Court must view the facts in a light most favorable to the nonmovant Hill, it cannot however assume facts necessary to establish Hill's claims in the absence of such evidence.[3] Therefore, as to the third element of the *Fowler* test, because the Court finds that Hill cannot point to any other evidence to support Muckleroy's illegal motivation to reassign him, and the Court's review of the record discloses none, Hill has failed as a matter of law to prove an illegal motivation for his reassignment. Accordingly, Hill's First Amendment claim must fail, and, as such, Defendants are entitled to summary judgment on this claim.

### D. Plaintiff's Fourteenth Amendment Claims

■ The Plaintiff alleges that the Defendant Muckleroy denied him, substantive and procedural due process guaranteed by the Fourteenth Amendment. The Fourteenth Amendment restricts state governments from depriving a person of life, liberty, or property without due process of law. A person is entitled to the protection of the Fourteenth Amendment only if he can show deprivation of or intrusion upon a property right or liberty interest. *Wells v. Hico Indep. Sch. Dist.,* 736 F.2d 243 (5th Cir.1984), *cert. dismissed,* 473 U.S. 901, 106 S.Ct. 11, 87 L.Ed.2d 672 (1985).

■ To succeed with a claim based on substantive due process in the public employment context, the plaintiff must show that he had a clearly-established property interest/right in his employment, and that the public employer's termination of that interest was arbitrary or capricious. *Moulton v. City of Beaumont,* 991 F.2d 227, 230 (5th Cir. 1993). Finding that Hill lacked a property interest in his coaching duties, the Court concludes that Hill's substantive due process claim must fail. Additionally, the Court finds, based on a review of the evidence, that Hill's reassignment was not arbitrary or capricious. Instead, Hill's reassignment was based on the disruptiveness of Hill's actions on the coaching staff. The Court, therefore, finds that Hill has failed to prove that he was denied substantive due process.

■ On the other hand, procedural due process entitles a public employee with a property right in his employment or a liberty interest, to adequate notice of the charges against the employee, an explanation of the employer's evidence, and a fair opportunity

---

**2.** The Court notes that in *Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987), the Supreme Court held that a government employee's speech related to a matter of public concern when, after hearing a radio report of the attempted assassination of President Reagan, the government employee stated that "if they go for him again, I hope they get him." *Id.* at 381, 107 S.Ct. at 2895. While the "life and death of the President are matters of public concern" and criticism of the President and his policies, however obscene, is an expression of political opinion that is protected by the First Amendment, in this instance, wishing death upon a former athletic director is a personal opinion that does not involve a matter of public concern. Moreover, because McPherson's statement was made during the course of a conversation with co-employee's concerning the President's policies on medicaid and welfare, the Court held that in viewing the context of the statement, it was protected speech. Such was not the case here. Hill's derogatory statements were made in a conversation with other coaches about the recent death of Mrs. McGallion (Defendant's Motion, Exhibit A).

**3.** *See, Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) ("resolving actual disputes of material facts in favor of nonmoving party is a world apart from 'assuming' that general averments embrace the 'specific facts' needed to sustain the complaint"), *quoting, Lujan v. National Wildlife Federation,* 497 U.S. 871, 889–90, 110 S.Ct. 3177, 3189, 111 L.Ed.2d 695 (1990).

to present his side of the story, i.e. a name clearing hearing.[4] *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 545–46, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985); *Delahoussaye v. New Iberia,* 937 F.2d 144 (5th Cir.1991); *Wells v. Dallas Indep. Sch. Dist.,* 793 F.2d 679 (5th Cir.1986). Accordingly, the Court considers in turn Hill's arguments that he has a property interest and/or liberty interest, and thus is entitled to procedural due process.

### 1. Property Interest and Procedural Due Process

▇▇▇▇ In evaluating Hill's claim that his Due Process rights have been violated by the reassignment of his coaching responsibilities, the Court must first identify whether there existed a property interest entitled to the protection of the Fourteenth Amendment. *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 537–39, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). There is no significant property interest in governmental employment unless applicable law creates such an interest. *See Board of Regents v. Roth,* 408 U.S. 564, 578–80, 92 S.Ct. 2701, 2710, 33 L.Ed.2d 548 (1972). "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....'" *Loudermill,* 470 U.S. at 538, 105 S.Ct. at 1491, quoting *Roth,* 408 U.S. at 576–77, 92 S.Ct. at 2709; *See also Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) (state law determines whether or not a property interest in employment exist). Furthermore, a property interest "is an individual entitlement grounded in state law which cannot be removed except for cause." *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982).

▇▇ Under Texas law at the time of Hill's reassignment, the Term Contract Nonrenewal Act (TCNA), Texas Education Code §§ 21.201–.211, only conferred upon public-school *teachers* a property interest in term-contract renewal for teachers, warranting due process protection. *Grounds v. Tolar Indep. Sch. Dist.,* 856 S.W.2d 417, 420 (Tex. 1993) (a property interest exist in term-contract renewal, not in the existing contract). Furthermore, *coaches* are not afforded a property interest in their coaching duties. *Grounds,* 856 S.W.2d at 421 (Justice Gonzalez concurring) ("neither the legislature nor this Court intended or presently intends to vest coaches with a property interest in coaching").

Pursuant to the terms of the parties' contract [5], Hill did not have any property interest in his coaching responsibilities. Although Hill's coaching duties have been revoked, Hill continues to teach at SISD. Moreover, Hill was paid his full coaching salary for the contract term despite his reassignment. Thus, it is clear that under both Texas law and under the terms of Hill's contract, the Plaintiff did not have any property interest in his coaching duties which would afford him protection under the Fourteenth Amendment for the alleged deprivation. Additionally, because Hill received the full amount of his supplemental salary for his shortened coaching duties, it is evident that no economic benefits have been lost, and thus, he has not suffered a constitutional deprivation. *See Jett v. Dallas Indep. School Dist.,* 798 F.2d 748, 754 (5th Cir.1986), *aff'd in part and remanded in part,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). Therefore, the Court finds that Hill has not been deprived of a property interest as he was not afforded a property interest in his coaching duties to

---

**4.** Because the Court finds that Hill does not have a property interest in his coaching responsibilities, nor was he deprived of a liberty interest protected by the Due Process Clause of the Fourteenth Amendment, Hill was not entitled to a name clearing or deprivation hearing because his procedural due process rights were not violated as a matter of law. However, even if Hill was entitled to a name clearing hearing, he had that opportunity and was afforded a name clearing hearing represented by counsel. (Defendants' Motion, Exhibit C, pp. 111 1. 12 to 112 1. 10).

**5.** The Plaintiff's contract regarding coaching responsibilities provided in relevant part that:

 If supplemental duties, e.g., coaching, are assigned, they will be compensated according to district's supplemental schedule, but such duties create no property interest, and may be terminated at any time without recourse.

begin with. Nor was Hill deprived of a property interest in his coaching salary since he was paid the full amount of his salary for the term of his contract.

### 2. Liberty interest and Procedural Due Process

 The word "liberty" as used in the Fourteenth Amendment "denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life...." *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923). To establish deprivation of a liberty interest, the plaintiff must show, among other things, that he was stigmatized in connection with the denial of a right or status recognized by state law; in other words, in order to vindicate a liberty interest, the plaintiff must first prove that a liberty interest exists. *Wells v. Hico Indep. Sch. Dist.,* 736 F.2d 243, 256 (5th Cir.1984), *cert. dismissed,* 473 U.S. 901, 106 S.Ct. 11, 87 L.Ed.2d 672 (1985). Retention of employment negates a person's claim that he was denied a liberty. *Moore v. Otero,* 557 F.2d 435 (5th Cir.1977). The reassignment of a teacher, by itself, is insufficient to trigger such a liberty interest.[6] *Thomas v. Smith,* 897 F.2d 154, 156 (5th Cir.1989). Moreover, the loss of coaching responsibilities is equally insufficient to trigger a constitutional deprivation of a liberty interest. *Jett v. Dallas Indep. Sch. Dist.,* 798 F.2d 748 (5th Cir.1986), *aff'd in part and remanded in part,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). Therefore, the Court finds that Hill has failed to prove that he was deprived of a liberty interest protected by the Due Process Clause of the Fourteenth Amendment.

 Additionally, Hill makes the argument that he has been stigmatized by the reassignment, thus entitling him to a name clearing hearing. In *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the United States Supreme Court held that any harm or injury to reputation alone does not result in the deprivation of any liberty or property interest sufficient to invoke the procedural protection of the due process clause. *Paul,* 424 U.S. at 712–14, 96 S.Ct. at 1166. The Fifth Circuit has applied this holding in *Paul* by requiring a section 1983 plaintiff to show stigma plus an infringement of some other interest. *Blackburn v. City of Marshall,* 42 F.3d 925, 935–36 (5th Cir.1995), citing, *San Jacinto Savings & Loan v. Kacal,* 928 F.2d 697, 701 (5th Cir.1991). To satisfy the stigma prong of this "stigma plus infringement" test, "the plaintiff must prove that the stigma was caused by a false communication". *Blackburn,* 42 F.3d at 936, quoting *Phillips v. Vandygriff,* 711 F.2d 1217, 1221 (5th Cir.1983). Moreover, the Fifth Circuit has found sufficient stigma only where a state actor has made concrete, false assertions of wrongdoing on the part of the plaintiff. *Kacal,* 928 F.2d at 701. In *Wells v. Hico Indep. Sch. Dist.,* 736 F.2d 243 (5th Cir.1984), *cert dismissed,* 473 U.S. 901, 106 S.Ct. 11, 87 L.Ed.2d 672 (1985), the Fifth Circuit stated that "the charges must be false" and that "for a charge to be stigmatizing, it must be worse than merely adverse; it must be such as would give rise to 'a badge of infamy, "public scorn, or the like.'" *Hico,* 736 F.2d at 256 n. 16. In the case before the Court, Hill has made no allegation the statements made by Muckleroy were false, clearly a prerequisite for a liberty interest-stigma claim. Additionally, Muckleroy's statement does not accuse Hill of any wrongdoing, only "that it was a coaching matter." Such a statement is not stigmatizing. Accordingly, Hill has failed to meet the stigma require-

---

6. Hill makes the argument that "loss of status" may give rise to a liberty interest, citing *Schultea v. Wood,* 27 F.3d 1112, 1118 n. 7 (5th Cir.1994), quoting *Moore v. Otero,* 557 F.2d 435, 438 n. 11 (5th Cir.1977). The Court finds this argument unpersuasive; the loss of status dictum in *Moore* was the transfer from police corporal to janitor. Clearly, Hill has not suffered such a loss of status, as Hill still remains a teacher, a position he held along with his supplemental coaching duties. The Court finds persuasive the Fifth Cir-

cuit's ruling in *Moore,* that the internal transfer of an employee, unless it constitutes such a change of status as to be regarded essentially as a loss of employment, does not provide the additional loss of a tangible interest necessary to give rise to a liberty interest meriting protection under the due process clause of the Fourteenth Amendment. *Cf. Colaizzi v. Walker,* 542 F.2d 969 (7th Cir.1976) (stigma plus employment discharge gave rise to liberty interest).

ment of the stigma plus infringement test and, thus, has not suffered a constitutional deprivation of his liberty interest.

### 3. Plaintiff's State–Based Liberty Interest Claim

 Hill claims that under the Texas Constitution, he is granted the right to speak freely on any issue and that this right gives rise to a federally protected liberty interest even if the speech in question would not be protected by the First Amendment of the United States Constitution. The Court first observes that Hill does not state any authority for the proposition that the Fourteenth Amendment would extend to protect and provide a cause of action for damages for speech which the United States Constitution would not protect. The Court is of the opinion that Hill is attempting to mask his state-based free speech claim as a federal liberty interest Fourteenth Amendment claim. Consequently, the Court, without holding Hill's state-based free speech claim would create a federally protected liberty interest, holds that even assuming that Hill had a liberty interest, Hill did have a name clearing hearing, and therefore was afforded due process as required by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Therefore, the Court is of the opinion that Hill's state-based liberty interest claim must be denied.

### E. Defendant Muckleroy's Defense of Qualified Immunity

 Defendant Muckleroy seeks to invoke the defense of qualified immunity in his individual capacity. Public officials acting within the scope of their official duties are shielded from civil liability by the doctrine of qualified immunity. *See Harlow v. Fitzgerald,* 457 U.S. 800, 814–19, 102 S.Ct. 2727, 2736–38, 73 L.Ed.2d 396 (1982). However, qualified immunity does not shield a public official whose conduct violates clearly-established constitutional rights at the time of the incident, if a reasonable person would have known that such conduct was unconstitutional. *Harlow,* 457 U.S. at 817–19, 102 S.Ct. at 2738. In assessing the defense, the court must initially inquire whether the Plaintiff has asserted the violation of a clearly established constitutional right. *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). If that inquiry is answered in the affirmative, then the court must then determine whether the Defendant's conduct was objectively reasonable in light of the established law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir.1995). The Court, having considered and reviewed all of the evidence before the Court, concludes that Defendant Muckleroy is not liable in his individual capacity under the defense of qualified immunity, finding that Muckleroy's conduct was not shown to have been retaliatory and that his actions were not unreasonable in light of clearly established constitutional principles.

### III. Conclusion

Accordingly, the Court having considered the Defendants' Motions and the Plaintiff's Responses thereto, as well as the Supplemental Briefs of the parties, is of the opinion that the Defendants' Motion for Summary Judgment should be GRANTED on the merits, and that Defendant Muckleroy's Motion for Summary Judgment should be GRANTED on the defense of qualified immunity as well.

**THEREFORE,** it is hereby **ORDERED ADJUDGED,** and **DECREED** that the Defendants' Motion for Summary Judgement is **GRANTED** on the merits, and the Defendant Muckleroy's Motion for Summary Judgment is also **GRANTED** on the defense of qualified immunity.