# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 7, 2024

Lyle W. Cayce
Clerk

———————

No. 23-30810

———————

STACIE DELLUCKY; FRANK DELLUCKY,

*Plaintiffs—Appellants*,

*versus*

ST. GEORGE FIRE PROTECTION DISTRICT; GERARD C. TARLETON, *in his Official Capacity as Chief, and Individually*,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:21-CV-287

———————————————————————

Before CLEMENT, GRAVES, and RAMIREZ, *Circuit Judges*.

PER CURIAM:[*]

Stacie and Frank Dellucky ("Appellants") sued the St. George Fire Protection District ("St. George") and St. George Fire Chief Gerard C. Tarleton ("the Chief") ("Appellees") based on Stacie's termination from St. George. The district court granted Appellees' motion for summary judgment as to each of Appellants' claims. We AFFIRM.

———————————————

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 23-30810

## I

St. George provides fire protection services in East Baton Rouge Parish. The Chief manages St. George's daily operations, including personnel matters. Stacie was employed by St. George in an administrative role in 2014. She was married to Chad Roberson ("Roberson"), who had worked at St. George since 1992. Frank had begun working for St. George as a firefighter in 1999. For most of his time at St. George, Frank was married to Nichole Dellucky, who was never employed by St. George.

In 2016, when the events giving rise to this suit began, Roberson was the Assistant Fire Chief. He and Stacie both worked on the second floor of St. George's administrative building. Although Roberson now serves as the Assistant Chief of Operations, he is slated to succeed the Chief. Frank had been promoted several times and eventually became the District Fire Chief for the A Shift, and his office was on the same floor as Stacie's and Roberson's.

Stacie and Frank began spending significant amounts of time together and were rumored to be in an intimate relationship. Nichole and Roberson began to suspect Stacie and Frank were having an affair, and Roberson hired a private investigator. In October 2016, Nichole and Roberson separately discovered Frank and Stacie together, in various states of undress, at their respective homes. Nichole called the Chief to complain about the situation.

The Chief testified in his deposition that regardless of its nature,[1] Stacie's and Frank's personal relationship had disrupted the workplace. For example, Frank spent significant time in Stacie's office although his position generally required him to be in the field. The relationship "was creating a

---

[1] One of the primary factual disputes Appellants emphasize is whether Stacie and Frank were in an intimate relationship before their divorces.

problem" for St. George and had led to "an unbelievable situation in the office[.]" Roberson similarly testified that the relationship had caused tension among the St. George leadership. After Nichole called the Chief, he met with Stacie and Frank and told them that they needed to stop allowing their personal relationship to interfere with work. Stacie and Frank maintained that their relationship was not sexual in nature; the Chief informed them that if they got married or entered into a long-term relationship, they could no longer work at St. George. The Chief did not bring the issue up again for quite some time.

In August of 2017, another St. George employee accused Frank of making sexually explicit comments to her. The Chief launched an investigation and, as a result, Frank agreed to resign and entered into a settlement agreement with St. George. In the settlement agreement, Frank maintained that he had done nothing wrong, but the parties expressed their "desire to fully settle any and all disputes between them[.]" Frank and St. George agreed to "hereby forever release, discharge, compromise and settle all claims and causes of action against each other, whether known [or] unknown, and whether asserted or unasserted." Frank began working for a different fire department.

Meanwhile, Roberson and Nichole each filed a petition for divorce from Stacie and Frank, respectively, in early 2017. Both divorces were finalized in 2018.

After their divorces were finalized, Stacie and Frank formalized their relationship, and they married in late June 2020. On July 7th, the Chief called Stacie into his office, and Stacie surreptitiously recorded the meeting on her phone. The Chief told Stacie that her marriage to Frank was "problematic[.]" He expressed concern regarding her ability to work with Roberson and reminded her about the conversation he had with her and

No. 23-30810

Frank in 2016, recounting that he told Stacie then that if she and Frank "got hooked up that neither one of [them] could work" at St. George. He also noted that Stacie's position was starting to become obsolete. Ultimately, he said, he was "following through on the discussion [they] had in the past" that Stacie's relationship with Frank was "a problem for [St. George]" and that Stacie and St. George would "need to part ways." Stacie was placed on administrative leave until August 16th, when her employment was officially terminated.

Following Stacie's termination, Appellants sued St. George and the Chief in his individual and official capacities.[2] They alleged that Appellees violated their rights under the First and Ninth Amendments,[3] "particularly their rights to Freedom of Association, Freedom of Religion, Freedom of sexual intimacy, Freedom from Religious Tests, and Freedoms to Privacy[.]" They also asserted claims under the "Due Process Clause, Equal Protection Clause, and Article VI, § 3 of the U.S. Constitution."[4]

--------

[2] Appellants also sued Jeff Landry, Attorney General for the State of Louisiana. Attorney General Landry moved to dismiss for failure to state a claim based on sovereign immunity. Appellants did not oppose the motion, it was granted, and their claims against Attorney General Landry were dismissed.

[3] "The Ninth Amendment does not confer substantive rights upon which civil rights claims may be based." *Johnson v. Tex. Bd. of Crim. Just.*, 281 F. App'x 319, 320 (5th Cir. 2008) (per curiam) (citing *Froehlich v. Wis. Dep't of Corr.*, 196 F.3d 800, 801 (7th Cir. 1999)). In any event, Appellants did not refer to any claim under the Ninth Amendment on appeal. "A party forfeits an argument . . . by failing to adequately brief the argument on appeal." *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021). Appellants' Ninth Amendment claim, to the extent it was asserted, is therefore not before us.

[4] Appellants do not challenge the dismissal of their Article VI, § 3 claim or their free exercise claim. Those claims are also forfeited. *Rollins*, 8 F.4th at 397. Appellants failed to address the equal protection argument that they raised before the district court and instead raise a new equal protection issue for the first time on appeal. As discussed below, that is insufficient to challenge the district court's equal protection holding. *Id.*

No. 23-30810

In February 2023, Appellees moved for summary judgment as to Frank's claims, arguing that they were time-barred and foreclosed by the parties' settlement agreement. Appellees filed a second motion for summary judgment as to Stacie's claims. Appellants filed separate responses to the two motions. In an order noting that local rules required a party to seek leave of court before filing a second summary judgment motion, the district court denied Appellees' motions in part but permitted them to refile one consolidated motion for summary judgment within seven days of the order. It also struck the two motions for summary judgment and all related pleadings, including Appellants' responses, from the docket. But it gave Appellants 21 days to respond to Appellees' consolidated motion for summary judgment—the typical period to respond as provided by local rules. Appellees filed their motion for summary judgment as to all claims. Appellants responded and purported to incorporate their previous responses to Appellees' original motions for summary judgment.

The district court held that there was no evidence that Appellees had an official policy prohibiting one class of employees from marrying another and that the Chief's decision to fire Stacie survived rational basis review. The district court rejected Stacie's due process claim because she did not present evidence of a property interest of which she had been deprived, her equal protection claim because such claims are precluded in cases involving public employment, and her free exercise claim because she had failed to adduce any evidence of her maintaining sincerely held religious beliefs. The district court declined to consider Appellants' stricken responses to Appellees' original summary judgment motions. Accordingly, the district court granted

Appellees' motion for summary judgment and dismissed the complaint in full.[5] This appeal followed.

We first address Appellants' objection to the district court's procedural handling of the summary judgment motions. We then discuss Appellants' challenge to the district court's summary judgment ruling, which is two-fold: first, Appellants contend that the district court improperly resolved certain factual disputes in Appellees' favor. Second, Appellants maintain that the district court misapplied the law to the facts as established by the summary judgment record to incorrectly conclude that summary judgment was appropriate.

## II

Appellants argue that the district court employed unfair procedures because it allowed Appellees to refile their improper motions for summary judgment as one consolidated motion but neglected to consider Appellants' responses to those motions. Specifically, Appellants object to the district court's declining to consider the arguments raised in their stricken responses despite the fact that Appellants purported to "incorporate *in toto*" those arguments into their response to the consolidated summary judgment motion.

"Discretionary matters, including the district court's application of local rules in disposing of motions, are reviewed under an abuse of discretion standard." *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019)

---

[5] Additionally, the district court held that Frank's claims were barred by the settlement agreement. The district court next held that Stacie had abandoned her Article VI, § 3 claim, and in any event, there was no evidence "that [Appellees'] actions ran afoul of the Constitution's prohibition against demanding a 'religious Test . . . as a Qualification to any Office or public Trust under the United States.'" Appellants do not challenge these holdings on appeal.

No. 23-30810

(citing *Victor F., by Gene F. v. Pasadena Indep. Sch. Dist.*, 793 F.2d 633, 635 (5th Cir. 1986)); *see also Victor F.*, 793 F.2d at 635 (reviewing a district court's decision to strike a motion that did not comply with local rules for abuse of discretion).

The Federal Rules of Civil Procedure permit courts to establish their own local rules, and Rule 83(b) permits a judge to "regulate practice in any manner consistent with . . . the district's local rules." FED. R. CIV. P. 83(b). And federal courts have the inherent authority to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)). The local rules applicable to this case dictate that a party may file only one motion for summary judgment unless he seeks leave of court and demonstrates good cause for submitting multiple motions. *See* M.D. LA. LOCAL RULE 56(h). The local rules also provide that a party opposing a motion will have 21 days to respond to that motion. *See* M.D. LA. LOCAL RULE 7(f).

Here, the district court noted Appellees' failure to comply with local rules by filing a second motion for summary judgment without leave of court. It struck both motions and related pleadings, and it also expressly struck "[Appellants'] memoranda opposing [Appellees'] motions" from the docket. The district court then exercised its discretion to permit Appellees to file one summary judgment motion within seven days incorporating the arguments set out in their two motions. Finally, it provided Appellants 21 days to file a new response to Appellees' consolidated motion.

Nothing in the district court's handling of the motions constitutes an abuse of discretion. The district court was clear with respect to what documents would be stricken from the record. It gave Appellants the full response time provided by the local rules, even though they had already

7

prepared substantive responses to the arguments raised in Appellees' original motions. And it deliberately struck a reasonable balance between admonishing Appellees' counsel for violating the local rules while also avoiding any undue prejudice to either party. Although Appellants contend that the district court's procedures were unfair, they do not point to any prejudice that they suffered as a result. Accordingly, the district court did not abuse its discretion by permitting Appellees to file a consolidated summary judgment motion within seven days, striking all pleadings related to Appellees' improper motions, and providing Appellants 21 days to respond, or by consequently declining to consider Appellants' responses to the improperly filed motions.

## III

Appellants contend that the district court erred in granting Appellees' motion for summary judgment for two reasons. First, they claim it misapplied the standard for resolving a motion for summary judgment because it incorrectly assumed that certain facts presented by Appellees were undisputed. Second, Appellants maintain that genuine disputes of material facts remain or that the district court erred in applying the relevant law as to several of their constitutional claims, thereby precluding summary judgment.

"We review a district court's grant of summary judgment de novo, applying the same standard on appeal as that applied below." *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). "This Court may affirm on grounds other than those relied upon by the district court when the record contains an adequate and independent basis for that result." *Britt v. Grocers Supply Co., Inc.*, 978 F.2d 1441, 1449 (5th Cir. 1992) (citations omitted).

## A

Appellants contend that the district court improperly applied the summary judgment standard because it wrongly understood certain material facts to be undisputed.

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine dispute as to a material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Rogers*, 755 F.3d at 353 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). We must draw all reasonable inferences and construe all evidence in the light most favorable to Appellants as the nonmoving party. *See id.* But "[o]nce a movant who does not have the burden of proof at trial makes a properly supported motion, the burden shifts to the nonmovant to show that a summary judgment should not be granted." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 321–25 (1986)). And the nonmovant cannot satisfy that burden with "conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Rogers*, 755 F.3d at 353 (quoting *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012)).

Here, Appellants do not identify which specific disputed facts the district court arguably resolved in reaching its decision, and they do not cite to any evidence in the summary judgment record calling any factual conclusions into question. Appellees made a properly supported summary judgment motion. It was therefore Appellants' burden to submit evidence showing that they are entitled to relief, *see Ragas*, 136 F.3d at 458, but instead Appellants did nothing more than attack Appellees' evidence with "conclusional allegations" and "unsupported assertions," *Rogers*, 755 F.3d

at 353. That is not sufficient. Appellants failed to satisfy their burden of pointing to evidence calling Appellees' version of events into question, at least with respect to the facts upon which Appellants' claims turn. The district court did not err in its handling of the factual issues relevant to resolving Appellees' summary judgment motion.

## B

Appellants maintain that genuine disputes of material fact preclude summary judgment or that the district court misapplied the law with respect to several of Stacie's constitutional claims.

## 1

Appellants contend the district court's dismissal of their right-to-marry claim was erroneous for two reasons. First, they argue that the district court incorrectly determined that the rational basis standard of review applies to their claim. Second, they apparently argue that the Chief's proffered justification for firing Stacie was pretextual.

"The right to marry is both a fundamental substantive due process and associational right." *Montgomery v. Carr*, 101 F.3d 1117, 1124 (6th Cir. 1996) (citing *Loving v. Virginia*, 388 U.S. 1, 12 (1967); *Roberts v. U.S. Jaycees*, 468 U.S. 609, 619 (1984)). The first step in resolving a right-to-marry challenge to government conduct is determining which standard of review applies. In *Montgomery*, the Sixth Circuit relied on the Supreme Court's opinion in *Zablocki v. Redhail*, 434 U.S. 374, 388 (1978), in establishing a two-part test for determining whether government action unconstitutionally impedes the exercise of the right to marry. 101 F.3d at 1124; *see also Lewis v. Smith*, 2022 WL 10965839, at *3 (5th Cir. Oct. 19, 2022) (per curiam) (endorsing *Montgomery*'s approach).

> [F]irst, a court must ask whether the policy or action is a direct or substantial interference with the right of marriage; second,

> if the policy or action is a direct and substantial interference with the right of marriage, apply strict scrutiny, otherwise apply rational basis scrutiny.

*Montgomery*, 101 F.3d at 1124 (quoting *Zablocki*, 434 U.S. at 388).

Policies that directly and substantially interfere with the right to marry generally involve prohibiting whole classes of people from marrying. *See id.* at 1124–25 (comparing cases). In *Zablocki*, the Supreme Court struck down a statute requiring non-custodial parents with child support obligations to seek court permission to marry. 434 U.S. at 387. Similarly, in *Loving*, the Supreme Court held that anti-miscegenation laws were unconstitutional. 388 U.S. at 1823. On the other hand, the Supreme Court has rejected constitutional right-to-marry challenges where the relevant government action "placed no direct legal obstacle in the path of persons desiring to get married" or where "there was no evidence that the laws significantly discouraged, let alone made practically impossible, any marriages." *Zablocki*, 434 U.S. at 387 n.12 (internal quotation marks omitted) (citing *Califano v. Jobst*, 434 U.S. 47, 98 (1977)).

Here, the challenged government action—the Chief's termination of Stacie—did not prohibit whole classes of people from marrying. Appellants adduced no evidence of a St. George policy barring co-workers from marrying or banning marriages between members of management and their subordinates. The evidence shows that the Chief's decision was motivated by the fact that *Stacie* married *Frank*; there is no evidence that the outcome would have been the same if the marriage had been between two other employees. Moreover, Stacie's termination clearly did not discourage or render practically impossible her marriage to Frank: the record indicates that they remain married today. The challenged government action did not directly and substantially interfere with Stacie's or Frank's right to marry. The district court correctly determined that the appropriate standard of

review, therefore, is rational basis review. *See Montgomery*, 101 F.3d at 1129–30.

"Under the deferential rational basis test, we ask 'whether a rational relationship exists between the policy and a conceivable legitimate objective." *Lewis*, 2022 WL 10965839, at *3 (alterations adopted) (quoting *Simi Inv. Co. v. Harris County*, 236 F.3d 240, 251 (5th Cir. 2000)). "The interest the government asserts to show rationality need not be the actual or proven interest, as long as there is a connection between the policy and a 'conceivable' interest." *Reyes v. N. Tex. Tollway Auth. (NTTA)*, 861 F.3d 558, 563 (5th Cir. 2017).

Here, the Chief justified terminating Stacie in their conversation in July 2020: Stacie's and Frank's relationship had caused trouble in the workplace in the past, and the Chief had warned them that if their relationship became permanent, they would not be able to work at St. George. Maintaining workplace order and morale and ensuring that the chain-of-command operates effectively is a legitimate objective. And Appellants' unsupported assertions notwithstanding, the summary judgment record suggests that Stacie's and Frank's relationship threatened the Chief's ability to accomplish that objective. Appellees have proffered summary judgment evidence showing that the Chief's decision to terminate Stacie bore a "rational relationship" to a legitimate objective. *Lewis*, 2022 WL 10965839, at *3. Accordingly, the Chief's decision to terminate Stacie's employment passes the rational basis test.

Appellants also argue that genuine factual disputes persist as to whether the Chief's proffered justification for firing Stacie was pretextual. But it does not matter if the proffered justification is pretextual under the rational basis standard of review because the legitimate objective cited during the litigation proceedings "need not be the actual or proven" objective.

*Reyes*, 861 F.3d at 563. Appellants failed to meet their burden to adduce evidence creating a genuine dispute of material fact with respect to their right-to-marry claim.

**2**

Appellants next apparently contend that the district court wrongly dismissed their equal protection selective enforcement or "class-of-one" claim. This argument was not raised before the district court. "A party forfeits an argument by failing to raise it in the first instance in the district court[.]" *Thomas v. Ameritas Life Ins. Corp.*, 34 F.4th 395, 402 (5th Cir. 2022) (quoting *Rollins*, 8 F.4th at 397). Although we have "considerable discretion in deciding whether to consider an issue that was not raised below," we will generally only exercise that discretion to address a purely legal question when failure to do so "will result in a miscarriage of justice." *Rollins*, 8 F.4th at 398 (internal quotation marks omitted) (quoting *Essinger v. Liberty Mut. Fire Ins. Co.*, 534 F.3d 450, 453 (5th Cir. 2008)). Appellants have forfeited this argument and had ample opportunity to present it to the district court, so we do not consider it here.

**3**

Finally, Appellants maintain that summary judgment was not warranted as to their claim that Appellees unconstitutionally deprived them of their liberty interests. They contend that Appellees' handling of the situation stigmatized Stacie and Frank in violation of their rights.

Appellants rely on *Cabrol v. Town of Youngsville*, 106 F.3d 101, 105 (5th Cir. 1997), in which we rejected an employee's claim that he was terminated in a way ostracizing him from his "close knit" community. There, we set out the test for such a claim:

> A public employee is deprived of a protected liberty interest *either* if terminated for a reason which was (i) false, (ii)

> publicized, and (iii) stigmatizing to his standing or reputation in his community *or* if terminated for a reason that was (i) false and (ii) had a stigmatizing effect such that (iii) he was denied other employment opportunities as a result.

*Id.* at 107 (emphasis in original). "The employee must also show that 'the *governmental agency* has made or is likely to make the . . . stigmatizing charges public 'in any official or intentional manner, other than in connection with the defense of [related legal] action.'" *Wells v. Hico Indep. Sch. Dist.*, 736 F.2d 243, 256 (5th Cir. 1984) (alterations in original) (emphasis added) (quoting *Ortwein v. Mackey*, 511 F.2d 696, 699 (5th Cir. 1975)).

Here, Appellants take issue with (1) Appellees apparent publication of the reason for Stacie's firing, which caused Stacie's and Frank's ostracization; and (2) Appellees inclusion of an embarrassing photograph of Stacie in their filings with the district court. The district court focused on Appellants' claim, not renewed on appeal, for deprivation of a property interest without addressing their claim for deprivation of their liberty interests. When a plaintiff alleges that she is deprived of her liberty interests, "loss of a property interest (such as tenured employment) is not required." *Id.* (citing *Dennis v. S. & S. Consol. Rural High Sch. Dist.*, 577 F.2d 338, 340 (5th Cir. 1978)). But, as noted, we may affirm on any ground supported by the record. *Britt*, 978 F.2d at 1449.

Appellants failed to point to any evidence that the Chief's reason for firing Stacie was publicized by Appellees, much less that it was done in an "official or intentional" way. *Wells*, 736 F.2d at 256. Indeed, the record suggests that individuals other than the Chief—that is, individuals who were not representatives of St. George—were responsible for spreading that information to other employees. Appellants also did not show that the rumors about their relationship prevented either of them from obtaining new employment. As to the photograph, Appellants adduced no evidence that it

14

No. 23-30810

was falsified or used in any misleading way by Appellees. And to the extent it was publicized by Appellees, it was publicized "in connection with the defense" of this lawsuit, and so its publication is not actionable. *Id.* The district court properly granted summary judgment against Appellants on their claim that they were deprived of a protected liberty interest.

\* \* \*

We AFFIRM the district court's judgment.

15